MEYER *v.* THE MIDLAND PACIFIC RAILROAD COMPANY.

| | |
|---|---|
| 2 | 319 |
| 8 | 90 |
| 8 | 159 |
| 10 | 292 |
| 11 | 258 |
| 12 | 607 |
| 13 | 327 |
| 2 | 319 |
| 33 | 239 |
| 2 | 319 |
| 37 | 740 |
| 2 | 319 |
| 43 | 402 |

## Meyer v. The Midland Pacific Railroad Company.

PRACTICE : *Instructions to jury.* It is the duty of the Court, by proper instructions, to direct the attention of the jury to the essential features of the case, and to such testimony as legitimately bears thereon, and not suffer the minds of the jurors to wander into the regions of conjecture, especially in a case the circumstances of which, or of the parties thereto, appeal strongly to their sympathies.

——— : ———. If the instructions given by the Court to the jury are so general in their nature as not to draw necessary distinctions, or are indefinite in their language, and strongly tend to mislead and divert attention from the real issues, or are not founded on nor applicable to the testimony, the verdict will be set aside, and a new trial ordered.

——— : *Disregard of instructions.* If the jury disregard the testimony and the instructions of the Court, and return a verdict not supported by the former, nor in obedience to the latter, their finding should be promptly set aside, and a new trial ordered.

RAILROADS : *Negligence.* The speed with which railroad-cars are run in a city or village must be regulated with due regard to the safety of the inhabitants and passengers, and to all the circumstances. A reasonable rate of speed in the open country is not reasonable in a thickly-settled town.

——— : ———. But a railroad company is not liable for an injury when its negligence only remotely contributed thereto.

——— : ———. And, if due diligence be exercised in running the train across a street in a city, the company is not liable, simply because it was running there, for an injury to a child which suddenly placed itself on the track in front of the cars.

——— : ———. It is not the duty of an engineer of a train of railroad-cars, whenever he sees a child of tender years running towards it, to slack his speed lest the child stop in front of the train, and suffer injury. The relative positions of the child and the train are to be taken account of by the engineer ; and he must exercise the judgment of a prudent person, having due regard to all the circumstances and to the safety of his passengers.

MEYER v. THE MIDLAND PACIFIC RAILROAD COMPANY.

RAILROADS : *Negligence.*  It is not negligence for a railroad company to dig and leave open a ditch across its track, two feet wide and eight inches deep, to carry off the surface-water.

——— : ———.  A railroad company is not liable for an injury sustained while its road is being built and operated by contractors who own the cars and engine by which the injury is committed, and of which the company had, at the time, no control.

Error to District Court for Otoe County.

The plaintiff was a girl of three and a half years of age ; and the defendants were the Midland Pacific Railroad Company, and the members of the firm of J. N. Convers & Company, contractors for building the railroad company's railroad.  On the 21st of May, 1870, while the contractors were constructing, operating, and had exclusive possession and control of the road, a construction-train ran over and killed a brother of the plaintiff, about two years old, and seriously injured the plaintiff, so that it was necessary to amputate her leg.  The accident occurred in Nebraska City, where Eleventh Street crosses the railroad-track.  At this point a ditch had been dug by the contractors across the track, about two feet wide and six or eight inches deep, for the purpose of passing the surface-water from one side of the road to the other.  It was not certainly and clearly shown how the children came to be on the track : but the evidence tended strongly to show that they were playing on the track ; and, just as the train was coming up, they were in the ditch, not visible to the engineer, and suddenly raised up when it was too late to stop the train.  The other circumstances material to the case, the testimony, and the instructions to the jury, are stated in the opinion of the Court.  The jury rendered a verdict for the plaintiff for ten thousand dollars.

*Shambaugh & Richardson*, for plaintiffs in error.

MEYER v. THE MIDLAND PACIFIC RAILROAD COMPANY.

1. The Court below erred in its instructions to the jury. The question of negligence was left wholly to the jury; and they were left at liberty to find the defendants guilty of negligence according to their own whims and prejudices, and without regard to law. In most cases, negligence is a mixed question of law and fact, to be found by the jury under the instructions of the Court. It is the duty of the Court to tell the jury what facts will amount to negligence, and leave it to the jury to find whether such facts have been proven or not. See 1 *Hilliard on Torts* (3d ed.), pp. 116, 117; 14 *Johns.*, 304; 4 *Zabr*, 268; 30 *Penn.*, 462; 35 *N. H.*, 277; *Law Reg.*, *Dec.*, 1862, 76; 24 *Vermont*, 487.

2. The charge of the Court is also erroneous in this, — that it took from the jury the consideration of the negligence of the plaintiff and her parents as the proximate and direct cause of the injury, and told the jury in express terms that negligence could not be imputed to her, although her parents suffered her to wander to and be upon the railroad-track, unattended by any person of suitable age and discretion ; and although she recklessly and incautiously threw herself on the railroad-track, in front of and close to the approaching train, and thereby caused the injury. This is not the law. We are aware that attempts have been made by some text-writers, and in some of the adjudged cases, to distinguish between the case of an adult and that of a child under the age of discretion in cases like the one at bar: in the former, holding that the negligence of the plaintiff, if it contributed to the injury complained of, was a bar to the action, although the defendant was also guilty of negligence ; and in the latter, that the plaintiff, although it is proved that she and her parents were guilty of gross negligence, is entitled to recover, if it is shown that the defendant was guilty of any degree of negligence, how-

ever slight.   But this distinction is not well founded,
and cannot be maintained.    An examination of the au-
thorities will show that the weight of authority is the
other way; and that in an action like this, where the
plaintiff's negligence caused the injury, he cannot re-
cover, whether he be an adult or child, or of sound or
unsound mind, although it is shown that the defend-
ant's negligence contributed to the injury.     See 1 *Hil-
liard on Torts* (3d ed.), 147, 148, 149 ; *Willetts* v. *Buffalo*,
14 *Barbour*, 585 ; *Hartfield* v. *Roper*, 21 *Wendell*, 617 ;
2 *Hilliard on Torts* (3d ed.), 367 ; 4 *Duer*, 439 ; 4 *Allen*,
283 ; 8 *Gray*, 123 ; 18 *N. Y.*, 422 ; 24 *N. Y.*, 430 ; *Sedg-
wick on Damages*, 103, 158, 539 ; 9 *Allen*, 401 ; 27 *Ind.*,
513 ; 28 *Ind.*, 287 ; 42 *Ill.*, 174.   Nor is there any reason
in the distinction.

The argument in favor of the exemption of a child
from the imputation of negligence is based upon the idea,
that it lacks sufficient judgment and discretion to enable
it to take care of itself; and that the servants and agents
of the railroad company are bound to know its condition,
and to use greater care and caution than in the case of
an adult.   But this argument, and the reasons upon which
it proceeds, reaches beyond the case of children, and
applies to deaf, blind, and idiotic persons who may chance
to be on or about a railroad, and who, on account of such
afflictions, are incapable of using that degree of care and
caution which is necessary to their safety, and which
may be expected of others not thus incapacitated.   And
how are the agents and servants of the company to know
that a person seen standing on or near the road-track
belongs to one of these unfortunate classes ?   Must they
stop the train every time a person is seen standing on or
near the track, and institute an inquiry to ascertain if
such person is of suitable age and discretion, and pos-
sesses all the necessary faculties, to enable him to take

care of himself? Or, if they fail to do this, is the company to be held liable for every injury that may occur, without regard to the fault or negligence of the person injured? To do this would be impracticable; and the absurdity of the proposition is its best refutation.

3. But, even if negligence cannot be imputed to the plaintiff, we think she cannot recover in this action, as the evidence shows that the accident occurred without any fault or negligence of the defendants, their agents or servants, and that no ordinary or reasonable degree of caution or prudence on their part could have prevented it; and we insist that the Court erred in refusing the instructions asked by the defendants. 47 *Penn.*, 304, 305; 4 *Duer*, 445; 18 *N. Y.*, 422; 24 *N. Y.*, 430; *Sedgwick on Damages*, 539.

4. The Court erred in refusing the second instructions asked by the defendants. The instruction was based upon the facts of the case, and stated the law correctly. If, while the train was in motion, the plaintiff ran on and upon the track in front of the cars, and so near to the same that it was impossible to stop the train before it struck her, the defendants cannot be held liable for the injury.

This instruction should have been given as asked; and the fact that the Court afterwards gave this instruction, with certain qualifications added thereto by the Court, only made the error the greater.

These qualifications required the defendants to do certain things which would be impracticable, and indeed impossible of performance. The instruction as qualified told the jury, " that, if the conductor or engineer might have seen the plaintiff running in the direction of the road, it was his duty to stop the train until he learned whether she intended to cross it or not." Suppose the conductor could or did see the plaintiff running in the

direction of the road in front of the train: could he stop it? and is it the duty of the engineer to keep watch over the surrounding country on either side of the road to see what is going on there? or can he be expected or required to do so? It is the duty of the engineer to keep the track in view, and see that it is clear of obstructions, and to give notice, by blowing the whistle or ringing the bell, when approaching crossings, and to use all reasonable precautions to avoid accidents and collisions at such places. The testimony shows he did all this; and nothing more ought to be required of him, and it would be impossible for him to do more without neglecting the duties of his position. If he were required to stop his train every time children were seen running or playing on either side of the road, it would be difficult to proceed with his train through a town or thickly-settled community, and the annoyance would become intolerable. See 1 *Redfield on Railways* (4th ed.), 548, *note* 15.

If persons are seen approaching the road, is it reasonable to suppose that they intend to keep on, and place themselves in a position that exposes them to danger? Would not the reasonable presumption in such case be, that they would stop short of such position? and is the company to be mulcted in damages because the engineer acted upon the latter and more reasonable presumption?

The qualified instruction as given by the Court was erroneous for the further reason, that there was no testimony conducing to show that the child was or might have been seen running in the direction of the road until just before she got on the track in front of the train, and after it was too late to stop the same in time to prevent the accident. There was no evidence on which to predicate such an instruction; and for this reason, if for no others, the giving of the qualified instruction was error.

5. The refusal of the third instruction asked by the defendants was error. This instruction, like the second, was based upon the facts of the case, and ought to have been given. This instruction simply declared the law to be, that " the fact that the train was crossing a public highway at the time of the accident did not render the defendants liable for the injury if the plaintiff placed herself upon the track in front of the cars, and so near the same, that it was impossible, by the use of due diligence, to prevent the train from running over her." This is certainly the law; and the proposition is complete in itself, and needs no qualification.

The qualification added by the Court is the same as that attached to the second instruction; and, for the same reasons, the giving of the third instruction with the qualifications added by the Court was error.

6. The Court erred in refusing the fourth instruction asked by defendants.

They can only be held liable for such negligence as caused the injury. Though the company, their agents or servants, may have been negligent in many respects, yet, if their negligence did not cause the injury, they are not liable; and, to make the defendants liable, it must be shown that their negligence was a direct and actual, and not merely a constructive wrong, and one that is the proximate cause of the injury, and not merely the remote and incidental cause of it. It must be such negligence as directly and naturally contributes to the injury. See 2 *Redfield on Railways* (4th ed.), 230 and *note* 12, 235 and *note* 29; 2 *Hilliard on Torts* (3d ed.), 366, 367; 13 *Ill.*, 551; 13 *Ind.*, 89; 4 *Duer*, 445.

The instruction stated the law correctly, and should have been given as asked; and the giving of this instruction afterwards with the modification added by the Court was error. The Court told the jury, in effect, that the

defendants were liable if their negligence "contributed to cause the injury." Under this instruction, the jury were not bound to find that the negligence (if any) of the defendants was the proximate and direct and actual cause of the injury, but were left at liberty, and indeed instructed, to find for the plaintiff, if the defendants were guilty of any negligence, which, in any remote or indirect manner, contributed to bring about the causes which led to the accident and the consequent injury to the plaintiff. The defendants cannot be held liable on proof of some negligence which in some way or other may have contributed to cause the injury, but only upon proof of negligence which was the proximate cause, and directly and actually caused the injury.

It is hard to comprehend the full meaning of this instruction as modified and given by the Court. It excludes the idea, that the defendants can only be held liable if their negligence was the direct and actual cause of the injury; and is broad enough to justify the jury in finding for the plaintiff, if, in their opinion, the defendants had been negligent in any matter, which, in any remote or indirect manner, was connected with or contributed to cause the injury. In one sense it may be said that the defendants' omission to place guards or sentinels at the crossing to warn all persons of the approach of the train, or to stop the train and examine the crossing to see if any persons were near or about to cross the road, before proceeding over the crossing, contributed to cause the injury; and yet the defendants were not bound to do either of these things, and cannot be held liable for the omission.

7. The Court erred in refusing the fifth instruction asked by the defendants.

The digging of a ditch under the road-track to pass the surface-water from the one side to the other, and

Meyer *v.* The Midland Pacific Railroad Company.

leaving the same open for that purpose, was not negligence. The defendants had a perfect right to do so. The ditch was outside of the travelled way, across the track; and in many cases, owing to the formation of the ground, the accumulation of water, and other causes, it is absolutely necessary to construct ditches for that purpose. This was not negligence; and the refusal of the Court to so instruct the jury left them at liberty to find negligence from this fact alone.

8. The Court erred in overruling the defendants' motion for a new trial.

9. The verdict is not sustained by sufficient evidence, and is contrary to law.

10. The verdict is clearly against the weight of the evidence; and, for this reason, the Court will reverse the judgment. 4 *Zabr*, 277.

11. There is a total lack of evidence as to a part of the defendants, and no sufficient evidence to authorize a verdict against the others. The M. P. R. W. Co. was not operating, and had no control over the road, and is not liable. See 2 *Hilliard on Torts* (3d ed.), 376, 377; 1 *Redfield on Railways* (4th ed.), 503, sect. 129 and *note* 1; 1 *Allen*, 9.

*Stevenson & Hayward*, for defendants in error.

I. The exception to the charge of the Court to the jury, going as it did to the whole of it, cannot avail the plaintiff in error. The charge consisted of several propositions, some of which are admitted to be good law; and it was incumbent on the plaintiff in error, if any one of them was, in his opinion, erroneous, to direct the attention of the presiding judge to the objectionable clause. *McReady* v. *Rogers*, 1 *Neb.*, 128, 129; *Anderson* v. *Anderson*, 23 *Texas*, 639.

Meyer *v.* The Midland Pacific Railroad Company.

II. The question of negligence is a question of fact to be found by the jury ; and it was proper to leave it to the jury. *Tabor* v. *Mo. Valley R. R. Co.*, 2 *American R.*, 519 ; 2 *Red. R. W.* (4th ed.), p. 251, *note* 16 ; *Oakland R. Co.* v. *Fielding*, 48 *Penn. State*, 320 ; *Shearman & Redfield on Negligence* (2d ed.), p. 59, *note* 2, p. 13 and *notes* 1 and 2.

III. The Court gave the jury instructions as to what would constitute negligence. If the plaintiffs in error claimed a more full and definite instruction upon that point, it was their duty to have requested it : not having done so, they cannot now complain: *Goodrich* v. *Eastern Railroad*, 38 *N. H.*, 390.

IV. The Court told the jury, that, if a child was injured through the negligence of the parties running the cars, they were not relieved simply because the parents may have been wanting in their duty towards the child ; but that, if the child was guilty of negligence, then they were released ; and that the question of negligence on the part of the child was with the jury. This is undoubtedly the law. If the child was injured through the negligence of the plaintiffs in error, they are liable, unless the child was negligent. The girl was guilty of no negligence, but was attempting to save her brother, as the engineer swears. The law has so high a regard for human life, that it will not impute negligence to an effort to preserve it. *Eckert* v. *Long-Island Railroad*, 3 *American*, 723 ; 43 *New York*, 502 ; 1 *Hilliard on Torts* (3d ed.), p. 149, *note* " a," part 3, also p. 146 ; 2 *Red. R. W.*, p. 225 ; *Shearman & Redfield on Negligence* (2d ed.), p. 59, *note* 2 ; *North Penn. R. Co.* v. *Mahoney*, 57 *Penn. St.*, 187.

A child of three years cannot be held to the same rules of care that apply to a grown person. 3 *American Law Times*, p. 42 ; *Bellfont. & Ind. R. C.* v. *Snyder*,

MEYER *v.* THE MIDLAND PACIFIC RAILROAD COMPANY.

18 *Ohio State*, p. 399; *Ray* v. *Tenn. R. R. Co.*, 3 *American R.*, 634; *Phil. & Read. R. R. Co.* v. *Spearin*, 11 *Wright*, 304, or 47 *Penn St.*, 300; *Smith* v. *O'Conner*, 12 *Wright*, 218; *Bridge* v. *Goodwin*, 19 *Conn.*, 507; *Robinson* v. *Bove*, 22 *Vt.*, 213; *Daley* v. *Norwich & W. R. Co.*, 26 *Conn.*, 591; *Shearman & Redfield on Negligence*, pp. 59, 60, also p. 13, *note* 2.

V. It is said that the same rule that would relieve a child from the imputation of negligence applies to deaf persons. This is not true, because, in the case of deaf persons, there is nothing showing to others their condition; while all who see a child must know at once that it is incapable of great care, and are bound to conduct themselves toward it with the greatest care. 1 *Redfield on Railways* (4th ed.), 548, and *note* 15; *Robinson* v. *Cone*, 22 *Vt.*, 213; *Shearman & Redfield on Negligence*, p. 61.

There was no error in the modification made by the Court to the second and third instructions asked. The instructions as given were correct; and it is no error to change instructions if they are correct as given. *Abbott* v. *Striblen*, 6 *Clark* (*Iowa*), 197; *Hobbs* v. *Outlaw*, 6 *Jones's Law*, 174.

VI. It is clearly the law, that if, by good care and watchfulness, the party in charge of a train of cars can see a person asleep on the track, or a child approaching the track as though it intended to cross the track, it was his duty to so have his train in hand, that, if possible, he may, if the child goes on to the track, or if the person asleep does not awake, prevent an accident. To hold the reverse would be monstrous. *East Tenn. & Ga. Rail W.* v. *St. John*, 5 *Sneed*, 524; *Morrisy* v. *Wiggins Ferry Co.*, 43 *Mo.*, 380; 42 *Mo.*, 79.

Especially is this so when the child is in a public highway. The testimony shows that the ground ascended

MEYER *v.* THE MIDLAND PACIFIC RAILROAD COMPANY.

to the south from the track, and that the girl came on to the track from the south. The engineer should have seen her.

There was no error in the modification made by the Court in the fourth instruction asked. The change made no material difference, and could not have injured the plaintiff in error. All the negligence need not be with the railway company to enable an injured party to recover. *Chicago & Alton R. Co.* v. *Pondrom,* 51 *Ill.,* 333 ; see *Stout* v. *Railroad Co., American Leg. Reg. for April,* 1872, p. 232, where the judge uses the same language, — " as contributed to cause ; " see *Shearman & Redfield on Negligence,* p. 10, *note* 2, and cited cases ; 43 *Ill.,* 64.

VII. It was no error to refuse the fifth instruction asked. Such instruction, if given, would have taken from the jury one fact which they alone could consider. The jury were to find, from all the facts, whether there was negligence or not. There was a conflict of testimony as to the depth, width, and location of the ditch ; and the Court had no right to decide whether or not leaving it open was negligence. See cases previously cited as to facts for jury.

VIII. There is evidence to sustain the verdict ; and, although the proof may be conflicting, the verdict will not be set aside. *Breese* v. *State,* 12 *Ohio State,* 156 ; *State* v. *Lamont,* 2 *Wis.,* 437 ; *Cook et al.* v. *Holmes et al.,* 5 *Wis.,* 107 ; *Hendy* v. *Smith,* 28 *Georgia,* 308 ; *Bowman* v. *Tarr,* 3 *Clark (Iowa),* 574 ; *McKnight* v. *Wells,* 1 *Mo.,* 13 ; *Robbins* v. *Alton Ins. Co.,* 12 *Mo.,* 380 ; 5 *U. S. D.,* p. 574 ; *Graham & Waterman on New Trials,* vol. i. 389 ; *Scott* v. *London Dock Co.,* 3 *Hurl & Colt,* 596 ; referred to in 28 *U. S. Digest.,* 436, sect. 104.

IX. The verdict is clearly according to the law of the case, and is fully sustained by the proof : therefore it

MEYER v. THE MIDLAND PACIFIC RAILROAD COMPANY.

will not be set aside for any technical error. *Graham & Waterman on New Trials*, 388–398.

The train that did the injury was under the direct control of J. N. Converse, the superintendent of the company; and the company is, therefore, liable. The railway company is liable for the acts of its contractors and servants. *Lowell* v. *Boston and Lowell Railway*, 23 *Pick.*, 24; see *Redfield's Railway Cases*, 375; *Mayor of New York* v. *Bailey*, 2 *Denio*, 433; *Elder* v. *Bemis*, 2 *Met.*, 599; *Wiswall* v. *Bronson*, 10 *Ird.*, 554.

X. The defendants in error insist that the judgment in this case should not be set aside, because the evidence shows beyond a doubt that the plaintiffs in error had not for some months used their road, and that they, knowing that no one had any reason to expect that it would be then used, without any notice to the people along the line of the road, started out a train of cars, with no regular brakeman and no fireman, on a Saturday afternoon, and, while in the limits of the city, ran their train faster than it had ever run before; and even after they had seen other children on their track, and knew that children were playing along and upon the track, they used no more precaution, but kept up the same rate of speed. This, under the peculiar circumstances, was negligence so gross, that it shows little care for human life.

Again: all the testimony shows that the crossing could be seen from the bridge, which is from six hundred to eight hundred feet from the crossing where the accident happened. The witness, —— Shorck, swears, that from the brewery, five hundred feet away, he could and did see the children. The engineer must have seen them if he had not neglected his duty. "Circumstances change and make duties; and that which would be an ordinary use of one's rights, may, by a change of cir-

MEYER *v.* THE MIDLAND PACIFIC RAILROAD COMPANY.

cumstances, become negligence, and want of due care."
3 *American R.*, 631, and cases there cited. This company,
by allowing children for some months to play on their
track, had thrown parents off their guard, and were
bound to use the greatest of care and vigilance in again
running over the road. 29 *Md.*, 420.

Agnew, Judge, in the case last cited, says, —

"Culpable negligence is doing something which a
reasonable, prudent, and honest man would not do un-
der all the surrounding circumstances." *Frankford, &c.,
Turnpike Co.* v. *Phil., &c., R. R. Co.*, 54 *Penn. St.*, 345 ;
17 *Mich.*, 99.

In the original petition filed in this case, Thomas T.
Thompson was named as a member of the firm of Converse
& Co. The petition was afterward amended by insert-
ing the name of Joseph T. Thomas in place of Thomp-
son. By oversight, the correction was not made upon
the judge's docket. The verdict was written, and the
name of Thomas T. Thompson inserted, as in the original
title of cause, instead of Joseph T. Thomas. The judg-
ment in this case follows the verdict. This is a clerical
error, and no cause for reversal. See *Nebraska Code*,
p. 416, sect. 145, p. 496, sect. 583 and sect. 595 ; *Hunt-
ington* v. *Ziegler*, 2 *Ohio State*, 10 ; *Sanders* v. *Etcherson*,
36 *Georgia*, 404 ; *People* v. *Ah Kim*, 34 *Cal.*, 189 ; *Clough*
v. *Clough*, 6 *Foster* (*N. H.*), 24 ; *Cervantes* v. *United
States*, 16 *Howard U. S.*, 619 ; *Little* v. *Larrabee*,
2 *Greenleaf*, 37 ; *Hickman* v. *Barnes*, 1 *Miss.*, 156 ; *Wil-
ford* v. *Grant, Kirby*, 114 ; *Wood* v. *Tallman, Cox*, 153.
See 28 *U. S. D.*, p. 626, sects. 13 and 18, and paragraphs
25 and 27 ; 15 *U. S. D.*, p. 556, sect. 2, and p. 34, sect. 2 ;
2 *U. S. D.*, pp. 663 and 665.

XI. Even if the negligence of the parents could be
charged to the infant, was the parent in this case guilty
of negligence in allowing even small children to play

upon a railroad-track which had not been used for a long time, and which he had no reason to think would be used? The testimony shows that children were on the track all along the line. This shows that this parent took the same care of his children that other parents in the neighborhood did ; and it will hardly be contended that none of them were "reasonable, prudent, and honest" men.

It was no positive act of the parent that placed this child in danger. He, a poor man, did the best he could ; but the child strayed away for an instant. Shall the child, when injured by a positive wrong, be without any redress? "A negligent wrong has been done ; the child was incapable of contributing to it : then why should not the wrong be compensated?" *Opinion of Agnew,* cited above. *Shearman & Red. on Neg.,* p. 32 ; *Coek* v. *Champlain & Co.,* 1 *Denio,* 91.

In cases like this, the rule *in pari delicto* is not applicable, the parties not being considered as equally at fault. 1 *Hilliard on Torts,* 145 ; *Central R. R. Co.* v. *Davis,* 19 *Geo.,* 437.

XII. The Midland Pacific Co. cannot claim to be exempted from liability for damages done on their road because the road belonged to them. It was being built for them under their control ; and they had been by law invested with authority to execute a work involving the exercise of the right of eminent domain, and affecting the rights of third parties : they are liable for the faithful execution of the power ; and they cannot escape responsibility by delegating to others the power with which they have been intrusted. *Lesher* v. *Wabash Nav. Co.,* 14 *Ill.,* 85 ; *Lowell* v. *Boston & Lowell Railway,* 23 *Pick.,* 24.

The railway company were bound to see that the road, the crossings, and the ditches were in a condition to do no

harm to third persons, who, in the exercise of their rights, might be passing over them; and, if they were not in such condition, they are liable, and guilty of negligence. *Danville, &c.,* v. *Stewart,* 2 *Met.* (*Ky.*), 119; *Shear. & Red. on Neg.,* 587, *notes* 1 and 4, and cases cited; *Godly* v. *Hodly,* 20 *Penn. St.,* 387; 2 *Hilliard on Torts* (3d ed.), pp. 292–297; *Colegrove* v. *New York,* 6 *Duer,* 382.

LAKE, J.

This is a proceeding in error, brought to reverse the judgment of the District Court for Otoe County, rendered in an action instituted by the defendant in error to recover damages for personal injuries alleged to have been sustained by her in consequence of the carelessness of the plaintiffs in error in running a train of cars over said company's railroad within the corporate limits of Nebraska City.

The errors complained of may all be included under three general heads: first, errors of the Court in the instructions given to the jury on its own motion; second, errors in refusing to charge as requested by the defendant; and third, that the verdict is not sustained by sufficient evidence. I will notice these alleged errors in the order here indicated.

The first objection cannot be sustained. The record shows that the Court instructed the jury upon several questions involved in the case, among which was that of the contributory negligence of the plaintiff's parents in permitting so young a child to wander from home into the dangerous locality of the accident, as affecting her right to recover for the injuries sustained.

While I am not now prepared to give an unqualified approval to all that is contained in this charge of the

learned judge who presided at the trial, yet, there being several propositions included therein which are undoubtedly correct, and entirely applicable to the case, and the exception going to the whole charge, it cannot be sustained. *McReady* v. *Rogers*, 1 *Neb.*, 124.

On the question of the parents' negligence, we find the courts very much divided in opinion as to whether it should be permitted to prejudice the plaintiff's right to a recovery; and, for the reason that we can dispose of the case without passing upon it, we prefer at this time to leave it undetermined.

It is next objected that the Court refused the second request for instructions, but gave it in a modified and objectionable form.

In the refusal to give the instructions as presented, I perceive no error. It was in these words: "If the jury believe from the evidence, that, while the defendants' cars were in motion, the plaintiff ran on to and upon the railroad-track in front of the cars, and so near to the same that it was impossible to stop the train before the same struck and passed over her, they will find for the defendants."

This is not the law. It would permit those in charge of the train to run it at the highest possible rate of speed in a quite thickly-settled portion of a city, without incurring any liability whatever for an injury done; when by a reasonably moderate rate, such as is usual in such localities, it would not have happened. I am of the opinion that an injury done under such circumstances might render the defendants liable.

It is doubtless true, even in the absence of a statutory regulation upon the rate of speed upon railroads within the thickly-settled portion of cities and villages, that a reasonable rate must be observed, which is to be determined from a due consideration of all the

circumstances. A proper regard for the safety of the inhabitants and their property imperatively requires that this should be so. It is but an application of the same wholesome rule to railroad companies in running their trains that would govern an individual in driving a team of horses along a public thoroughfare. Here it is quite clear that a rate of speed that would be entirely justifiable in the open and sparsely-settled country, might, in the crowded streets of a city, be considered as criminal carelessness. *The Frankford and Bristol Turnpike Co.* v. *The Philadelphia Railroad Co.*, 54 *Penn. St.*, 345.

But, while there was no error in the refusal to give this instruction, I am quite certain, that, as modified, it was erroneous, to the prejudice of the defendants. The modification is in these words : " This is the law : Unless the conductor or engineer in charge of the train, by the exercise of care and watchfulness, might have seen the child or children running directly towards the track, so as to cross it, and, from their size and conduct, knew the child or children to be under the years of discretion, it was then the duty of those in charge of the train to check its speed if possible, and put the same under such control, if practicable, as to be able to avoid a collision with the children if they continued their course on to and across the railroad-track."

This modification of the instruction, if taken in its unqualified literal sense, and as quite likely to be understood by the jury, would imply an imperative duty on the part of an engineer, whenever he sees a child of tender years running towards the track, to slack his speed, lest he might, perchance, stop in front of the moving train, and suffer injury, *and this without reference to the relative position of the child and train.* This would be a most unreasonable requirement, and not at all consistent

MEYER *v.* THE MIDLAND PACIFIC RAILROAD COMPANY.

with the proper exercise of the rights of the company in respect to their own property or their duty to the travelling public. But another fault is, it is altogether too indefinite, and has a strong tendency to mislead the minds of the jury, and to divert them from the real issues of the case.

The post of an engineer while running a train of cars is one of very great responsibility and danger. It not unfrequently calls for the immediate exercise of his judgment under circumstances that are well calculated to appall even the stoutest heart. It is his duty continually to exercise the greatest care consistent with the business in which he is engaged; and especially is it his duty to keep the track constantly in view, in order that any visible defects therein, or objects which may have been placed thereon, calculated to endanger his train or the safety of the passengers, may be avoided. He should also be watchful to a reasonable extent upon both sides of the track, to prevent all unnecessary collision with animals which might run upon the track from the immediate vicinity. But, while all this is due from an engineer, he should not be expected to perform impossibilities, or exercise a prescience that is greater than ordinarily falls to the lot of man.

Undoubtedly, if the engineer had seen this little child "running directly towards the track," in front of the moving train, with the apparent intention of going upon or crossing it, and so near as to lead a prudent person to conclude, unless the train were stopped or its speed slackened, a collision would be probable, had he failed to do all in his power to prevent it, having, of course, a due regard for the lives of those on board the train, he would have been guilty of culpable negligence, and his employers liable for the injury. But this is not the only substantial objection to this instruction as given to

22

the jury. It supposed a state of facts to exist which there was no evidence to support. There was no testimony tending even to show that the child was seen " running towards the track," or that she was in a position where she could have been seen by the engineer one moment sooner than she was, as sworn to by him. It is altogether probable, and it seems to be generally conceded, that she and her little brother were concealed in the small ditch which crossed the track at the place of the accident, and stepped out of it upon the track when the train was so near, that, by the efforts which were put forth, it was not stopped until the engine had passed over them.

The tendency of this instruction was to mislead the jury, and give them to understand that they were at liberty to resort to mere conjecture to enable them to account for what the testimony failed to show ; and that they might infer the existence of a state of facts, in respect to the relative position of the parties, which the testimony would not warrant. There was no evidence upon which to predicate this instruction. The charge of the Court to the jury should always be founded on, and be applicable to, the testimony ; and when it is not, and is calculated to mislead the jury in considering the facts of the case, the judgment ought to be reversed. *Meredith* v. *Kennard*, 1 *Neb.*, 312, and cases there cited.

The third instruction requested by the defendants, and refused by the Court, was as follows : " The fact that the train was crossing a public highway at the time the accident happened does not render the defendants liable for the injury to the plaintiff, if the jury find from the evidence that the plaintiff placed herself on the track in front of the cars, and so near to the same, that it was impossible, by the use of due diligence, to prevent the cars from running over her."

MEYER *v.* THE MIDLAND PACIFIC RAILROAD COMPANY.

This is no doubt a correct proposition of law, and entirely applicable to the testimony which the jury were called upon to, consider. The refusal of the Court to give it left the jury to infer that the defendant was liable merely because the accident happened at a street-crossing, notwithstanding they may have been in no fault whatever in running the train; as, for instance, in their efforts to stop it just as soon as the perilous situation of the child was discovered.

This will not do. It is the right of a party to a suit, by proper instructions, to have the minds of the jury directed to the essential features of the case, and their attention challenged to the testimony which should influence them in making up their verdict. They should also be advised of the legal effect of the establishment of, or failure to establish, the material facts of the case. When, however, this is not done, but, on the contrary, their minds are diverted from the real issues to be tried, and permitted to wander outside of the testimony into the region of mere conjecture, for the purpose of finding an excuse for returning a verdict in accordance with their own sympathies and desires, the chief value of a judicial trial is lost; and it is impossible to measure the injurious consequences that are likely to follow. More especially is this so in a case like the one at bar, where the jury had before them, as plaintiff against a railroad company, a mere child, who, by so terrible an accident, had been so unfortunate as to be made a cripple for life while perhaps endeavoring to rescue her little brother, who was so shockingly crushed to death.

The fourth instruction requested by the defendants ought to have been given without the modification made by the Court. The instruction was as follows, with the modification of the Court inserted therein in brackets: " The negligence which will render the defendants lia-

ble for the injury to the plaintiff must be such negligence as [contributed to cause] caused the injury."

By refusing the instruction as tendered, and giving it as changed, the jury were given to infer, that any negligence of the defendants that in any way " *contributed to cause* " the injury, no matter how remote it may have been, was sufficient to fix their liability.

This instruction was altogether too general, and entirely failed to draw the proper distinction between that negligence which may have been existing and present at the time of the accident and that which could have had only a very remote and indirect bearing or influence upon it. *The Philadelphia and Reading R. R. Co.* v. *Spearen,* 47 *Penn. State,* 300.

The fifth instruction refused by the Court was predicated upon the fact, that, just where the accident happened, there was a small open ditch, some two feet in width by from six to eight inches in depth from the bottom of the ties, for conducting the water across the track. By it the Court was asked to instruct the jury, that the mere fact that the defendants had dug the ditch, and left the same open, was not an act of negligence on their part which would render them liable ; but the Court held otherwise, and denied the request. In this, I think, there was manifest error, which no doubt largely contributed to the verdict against the defendant.

But it is insisted on behalf of the plaintiff, that, because there was a conflict of testimony as to the size and exact location of the ditch, it was rightfully left to the jury to say whether leaving it open was an act of negligence on the part of the railroad company. This would be correct, if the ditch, as described by either of the witnesses, could be regarded as evidence tending to show negligence. Not only has no case been cited, but, after a pretty careful research, I have not been able to find

one, which furnishes any support to the position taken by the plaintiff's counsel.

The digging of this ditch, and keeping it open, to pass the surface-water from one side of the track to the other, was not at all unusual, nor can it be regarded as an act of negligence. This the Court should have told the jury; and the refusal to do so left them at liberty to find negligence from this fact alone. Where a fact is relied upon as constituting negligence, the Court should, especially if requested, inform the jury, whether, if the fact be proven or admitted, they are at liberty to infer negligence therefrom. The jury have no right to determine that a given act is one constituting negligence in opposition to the judgment of the Court. And where, by a fair consideration of all the evidence, there is nothing shown to warrant a verdict against one or more of the defendants, it is the right of the Court to either nonsuit the plaintiff, or direct the jury to return a verdict against him as to such defendant. As to the Midland Pacific Railroad Company, this clearly is the course that should have been pursued, there being no evidence against them.

But did the testimony warrant a verdict against either of the defendants? As to the railroad company, it is very clear that they were in no way responsible for the accident. The principle of *respondeat superior*, which has been invoked, and is relied upon by counsel for the plaintiff, has no application here. The relation of principal and agent, or master and servant, as to the railroad company, did not exist.

The testimony shows that B. C. Smith and J. T. Thomas, on behalf of themselves and their associates, had entered into a written contract with the railroad company, whereby they undertook and agreed to build and fully equip the road from Nebraska City to Lincoln

entirely at their own labor and expense; and, at the time of the accident, the defendants, J. N. Converse & Co., were engaged in the construction of the road under this contract, only a very small portion of which had been done.

The persons engaged in the work were not under the control of the railroad company, nor had any portion of it been accepted or taken possession of by them. The locomotive and cars were the property of J. N. Converse & Co., used by them upon the work; and the engineer who was in charge at the time of the accident was in their employ, and under their exclusive control, and in no wise answerable to the company. *Boswell et al.* v. *Laird et al.*, 8 *Cal.*, 469.

Upon this state of facts, the Court very properly instructed the jury, in substance, that if they believed from the evidence, that, at the time the injury to the plaintiff occurred, the Midland Pacific Railroad was being built by J. N. Converse & Co. under a contract with the Midland Pacific Railroad Company, and that the train of cars that ran over the plaintiff was owned and operated by J. N. Converse & Co., and that the Midland Pacific Railroad Company had not at the time of the accident any control over said road or train, then the latter could not be held liable for the injury. This instruction was correct; and, had the jury been guided solely by the testimony, they could but have found that the exact state of facts existed which they were told would release the railroad company from all liability. There was no conflict in the testimony on this point; but still the jury saw fit to totally disregard both the evidence and instruction of the Court, and return a general verdict against all the defendants. For this disregard of their duty, the verdict, at least as to the railroad company, should have been promptly set aside.

MEYER *v.* THE MIDLAND PACIFIC RAILROAD COMPANY.

But what is the testimony upon which it is relied to support the judgment against the other defendants ? Is it sufficient to sustain the verdict against any of them ? If so, I apprehend there would be no difficulty or impropriety, under our code, in affirming it as to them; and, as to those against whom there is no testimony, to set it aside.

It is alleged in the petition, and the *gravamen* of the charge is, that the injury was caused by the gross carelessness of those in charge of the train in running it. It is in these words : that the defendants, " by and through their carelessness, negligence, improper conduct, and default of themselves and their said servants, and for a want of due care and attention in that behalf, caused one of their locomotives, and train of cars attached thereto, to approach the said crossing of said Eleventh Street and public road, and then and there caused their said locomotive, and train of cars attached thereto, to pass rapidly over the track of said railroad, and strike, run against, and over, the said plaintiff, and break one of the legs of the said plaintiff, and otherwise bruised and injured the said plaintiff; by reason whereof," &c.

This was the sole charge against the defendants; and a reference to the testimony of the plaintiff will show that it was all directed to its support. It was, in fact, the sole cause of action. It is true, that, upon argument, allusion was made to the small ditch before mentioned, and it was made the subject of a request for an instruction by the defendants; but no complaint is made of it in the petition, nor is there any thing in the testimony respecting it which should work the least prejudice to either of them. *The Illinois Central Railroad Co.* v. *Middlesworth*, 43 *Ill.*, 64.

Upon the question of negligence in the running of the train, there were several witnesses examined on the

part of the plaintiff, whose statements as to the speed at which it was going, although somewhat conflicting, are no more so than should be expected under all the circumstances. They were occupying different positions at the time; and their minds being more or less diverted to other matters made it impossible that their accounts of the transaction should be altogether harmonious.

The witness Thompson testified that he " did not see the spot where the accident occurred, but saw the train immediately before." His opinion was, that, when he saw the cars, they were going " at the rate of about twelve miles per hour ; " that he " judged so from the speed of a horse." But, on cross-examination, he swore that he " did not know the rate of speed the cars were going." Indeed, the entire testimony of this witness shows that his opinion as to the speed of the train was of very little value.

Mrs. Kearney, who lived but a short distance from the place of the accident, saw the train, but " did not know how fast it ran ; " thinks it " ran faster than she had ever seen it do before " when passing her house.

Mrs. Hastings's testimony is substantially the same on this point.

Guy A. Brown testified, that, at the time of the accident, he was at work in his garden, about four hundred feet from where it happened ; that he heard the whistle sound " Down brakes " when the locomotive was about fifty feet or more from the crossing; that he saw men at work at the brakes, and the train was stopped with the rear end of the hindmost car just west of the street. He thought the train was moving at the rate of from twelve to fifteen miles an hour when he first saw it, but would not be at all positive about it.

The witness Shorck is the only person, except the engineer in charge of the locomotive, who pretends to have

seen the plaintiff and her brother near the track before the injury. He swears that he saw them sitting between the ties, "about two hundred and twenty-eight or three hundred and thirty-eight yards" in front of the approaching train, which was running very fast, — faster than they were accustomed to run; but he gives no estimate of their speed.

But a due consideration of all the testimony of this witness compels me to give it very little weight. I am convinced he was swearing at random. For instance, when asked whether the speed of the train was slackened at all, he answered, that "they did not until they struck the children : then they did." When asked how far they ran after striking the children, he says, " From three to five yards." This could not have been possible, if the speed was as testified by any one of the witnesses. Not only does all the other testimony for the plaintiff establish, but the common experience of every person who has the least knowledge of a moving train of locomotive and cars shows, the utter worthlessness of this kind of testimony. It is entitled to no credit whatever, and should be disregarded, especially when it conflicts with that of other credible witnesses.

The witness Cash called by the plaintiff, who has had large experience as an engineer in the running of locomotives, and who is, to all appearance, a very fair witness, swears that a train like this, composed of locomotive, tender, and one car, on this track, if skilfully handled, and running from five to six miles an hour, could have been stopped within about fifty yards; and, if going at the rate of, twelve miles an hour, within about one hundred yards.

Now, the plaintiff's witness, Brown, while he somewhat loosely estimates the speed of the train when he first discovered it at about twelve miles an hour, says

very frankly that he is in no wise certain about it; and testifies, that, when the whistle sounded " Down brakes! " the train was about fifty yards from the crossing where the accident occurred; that he saw persons applying the brakes, and the train was stopped just west of the crossing.   This shows quite conclusively that the speed of the train between the bridge and the place of the accident could not have exceeded five or six miles an hour, and that, upon the call of " Down brakes! " every reasonable effort was put forth to avoid a collision and save the plaintiff.   I am of the opinion that there is next to a total want of evidence to support the charge of carelessness in the running or stoppage of the train, on the plaintiff's own showing; while there is a large number of witnesses called by the defendants whose testimony all goes to confirm this conclusion.

It only remains to inquire whether the engineer was at all remiss in the duties resting upon him, — in keeping watch for objects upon the track, and in giving warning of the approach of the train.   On this point I find no difficulty.   The testimony shows most conclusively, that, from the time of starting from the depot, he used the whistle at all highways and crossings, fifty yards from each, and kept the bell constantly ringing; that he had the track constantly in view, and saw neither of the children until he was within about eighty feet of the crossing before spoken of.

The engineer swears, that, if the children had been on the track, he could have seen them; that he first saw the boy, and supposed he rose from the ditch; that he whistled " Down brakes " immediately, reversing the engine, and did all in his power to stop the train.   The plaintiff he did not see until the locomotive was just about to strike her, and when he was exerting himself to the utmost to save the boy.

MEYER *v.* THE MIDLAND PACIFIC RAILROAD COMPANY.

After a very careful consideration of this case, I am forced to the conclusion, that the verdict as to all the defendants is clearly and palpably against the weight of evidence, and should not be permitted to stand. For these several reasons, the judgment must be reversed, and a trial *de novo* awarded.

Judgment accordingly.