Spaldins, J.
There are really but two questions presented in this case for our consideration:
First. Was the notice of protest for non-payment transmitted with sufficient diligence and directness to the defendant ?
The bill matured and went to protest on the 19th of June, 1846. It was then in the hands of an agent of the plaintiff in the city of New York. Admit that agent to have been the actual cashier of the “ Trust Company.” He was then attending to an agency in the city of New York, and, so far as it concerned the bill in question, which was discounted at the bank in Cincinnati and sent to him in New York for collection, he may as well he called an agent as any indifferent person. Thi3 agent, on the very next day after the protest in New York, sent the notice by mail to his principal in Cincinnati, where it arrived on' the 25th of June, and on the same day -was again placed in the mail, directed to the defendant at Ripley. The most stringent rules of the law merchant will require no more than this. The whole objection of counsel is based upon the fanciful idea that the Ohio Life Insurance and Trust Company at Cincinnati, was embodied in the person of its cashier, Wm. M. Yermilye, in the city of New York; and that it was sending the notice of protest from itself in New York to itself in Cincinnati. We are not inclined to indulge in subtleties of this sort, and hold that Mr. Yermilye in New York, whether he be called agent or cashier, was employed by the holder of the bill in Cincinnati to present the same for payment; and, on pay ment being refused, to return it in due time, with the ordinary notice of protest, to his employer in Cincinnati, whose duty it would be to communicate with the other parties to the bill.
*64 Second. Is the “ act for the relief of sureties and bail in certain cases ” (Swan’s Stat. 877) intended to include drawers, acceptors and indorsers of bills of exchange?
The first section of the act is in the following words :
“ That when any person or persons shall hereafter become bound as surety or sureties, by bond, bill or note, for the payment of money or other valuable thing, and shall apprehend that his or their principal debtor or debtors is or are likely to become insolvent, or remove from the county or state, without previously discharging such bond, bill or note, so that it will be impossible or extremely difficult for such surety or sureties, after being compelled to pay the amount of the money or other valuable thing which may be due by such bond, bill or note, to recover the same back from such principal debtor or debtors, it shall and may be lawful for such surety or sureties, in every such case, provided a right of action shall have accrued on such bond, bill or note, to require, by notice in writing, his or their creditor or creditors, forthwith to put such bond, bill or note, by which he or they may be bound as surety or sureties as aforesaid, in suit. And unless the creditor or creditors, so required to put such bond, bill or note in suit, shall in a reasonable time commence an action on such bond, bill or note, and proceed, with due diligence, in the ordinary course of law, to recover a judgment for, and by execution, to make the amount of the money or other article of value due by such bond, bill or note, the creditor or creditors, or the assignee or assignees of such bond, bill or note, so failing to comply with the requisitions of such surety or sureties, shall thereby forfeit the right, which he or they would otherwise have, to demand and receive of such surety or sureties the amount which may be due by such bond, bill or note.” In great commercial countries it is imperatively necessary that, in their multiplied business transactions, men shall lend to one another their credit and responsibility. It is therefore expedient that such rules shall be applied to the system of securityship, in all its various ramifications, as that the least pos *65 sible burthen may be thrown upon those who are willing and able to incur liabilities for others.
Hence it has always been the policy of our law to extend to-sureties all the indulgence consistent with an exact observance1 of the rights of creditors.
The statute which we are required to interpret, has its foundation in the best of ethical philosophy: “ Whatsoever ye would that men should do unto you, do ye even so unto them.”
There can be nothing wrong in requiring that, after debts become due, their collection shall be enforced against those for whose benefit they have been contracted.
At common law, the surety who doubted the continued responsibility of his principal, was compelled, unless at the option-of the creditor, to pay the debt himself before he could enforce1 collection at the hands of the debtor.
In the language of the judge who pronounced the opinion in Ex’r of McDowell v. Buttles, 2 Ohio Rep. 303, “ the object of this act is plainly to enable sureties to compel a creditor, where-his debt is due, to pursue the principal debtor by a suit, or exonerate the surety. It was intended to relieve sureties when the creditor felt safe in the responsibility of the surety, and took no-steps to collect his debt; and it contemplates extending this relief, in a different form from that of compelling the surety to pay the debt himself, and thus become the creditor and bring suit.”
And the law will apply to every class of securities that may be brought by liberal intendment within its meaning. There can be no substantial reason why the person who signs a note alone as drawer or maker for the accommodation of the payee, may not be entitled to the benefit of this act as well as he who signs below the principal with the word “ surety ” appended to his name. It can only be necessary, in any event, that the holder of the paper shall be made acquainted with the fact that the party seeking relief is a surety.
It is claimed, however, that bills of exchange do not come within the purview of the act; that the phrase “ bonds, bills *66 and notes,” does not mean obligations under seal for the pay ment of money; written orders for the-payment of money, and promises in writing for the payment of money; but that it means “ bonds, single bonds and notes.”
In other words, it is insisted that the word “ bills,” in this connection, means “ single bonds,” in contradistinction to bills ■of exchange. We can adopt no such forced construction.
The legislature, doubtless, intended to embrace in the act for the benefit of sureties, the three great classes of written contracts for the payment of money; specialties, bills of exchange and promissory notes. And we are of opinion that, whatever be the nature of the paper, and whatever the position •of the surety therein, whether primarily or collaterally liable, if he be in fact a surety, and known to the creditor as such, he can claim the benefit of this act.
In the case before the court, the defendant was known to be the accommodation drawer of the bill — a mere surety for Collins, the acceptor. On the 19th of March the plaintiff was notified that Collins was in doubtful circumstances, and that it was requisite, in order to insure the safety of defendant, that suit should be instituted forthwith against the acceptor. Tho April and August terms of court were suffered to pass by. At the October term suit was commenced; but, before the term came on at which judgment could be taken, the debtor was insolvent. We are of opinion that the plaintiff, under the notice from defendant, was bound to institute suit at the April term. If' this had been done, the proof shows the debt might have been saved. The loss must now fall on the plaintiff.

Judgment affirmed,.