DECREE ACCORDINGLY.

---

THE B. & M. R. R. Co. IN NEBRASKA, PLAINTIFF IN ERROR, v. FERDINAND WENDT, DEFENDANT IN ERROR.

1. Negligence: EVIDENCE. In an action to recover damages for the killing of an animal by a train of cars upon a railroad track, the mere fact of killing was properly held to be no evidence of negligence on the part of those in charge of the train.

2. ———: GROSS NEGLIGENCE. In such action an instruction that— "The running of a train past, or through the streets of a city at a speed of eighteen miles an hour, would be gross negligence," there being no evidence as to the character of the particular locality distinguishing it as an inhabited or business portion of the city, *held*, erroneous.

3. ———: ———. When for want of evidence of gross negligence there can be no recovery, the jury should be so told, if requested, or a non-suit ordered.

ERROR to the district court for Douglas county. Tried below, before SAVAGE, J. The action was to recover the

value of a cow owned by Wendt, and killed by cars of the railroad in Omaha.

*G. W. Ambrose*, for plaintiff in error, cited *Saint Louis· R. R. v. Linder*, 39 Ill., 433. *Railroad v. Parker*, 29 Ind., 471. *C. & M. R. R. v. Patchin*, 16 Ill., 198. *R. R. Co. v. Phelps*, 29 Ill., 447. *Vandergrift v. Rediker*, 2 Zab., (N. J.) 185. *C. & N. W. R. R. v. Goss*, 17 Wis., 428. *Stucks v. M. & R. R.*, 9 Wis., 213. *Clark v. S. & U. R. R.*, 11 Barb., 112. *Marsh v. N. Y. & E. R. R.*, 14 Barb., 364. *Munger v. R. R. Co.*, 4 N. Y., 349. *Williams v. M. C. R. R.*, 2 Mich., 259.

*H. Stull*, for defendant in error, cited *Bellefontaine & Indiana R. R. v. Snyder*, 18 Ohio State, 399. *Cincinnati & Zanesville R. R. v. Smith*, 22 Ohio State, 237. *Hoyt v. City of Hudson*, 41 Wis., 105.

LAKE, J.

By the judge's charge the jury were explicitly and very properly told that "the mere killing of the cow" was "no evidence of negligence." The fact that the cow had been killed by a moving engine of the company, at the time and place charged, being admitted by the answer, the only material testimony given upon the trial on this point was as to the speed of the train at the time of the accident. This, according to the complainant's witnesses, was somewhere between twelve and eighteen miles an hour, while those of the company placed it at not to exceed eight.

That this conflicting testimony as to the velocity of the engine when it struck the cow was, in the mind of the judge, the pivotal point on which the decision of the jury must turn is apparent, for in referring to it, he said : "The running of a train past, or through the streets of a city, at a speed of eighteen miles an hour would be gross negligence.

·The running of a train at eight miles per hour, or at such other moderate speed as is necessary and customary, in order to carry on and do the business of the defendant company, was not such gross negligence. The question is then mostly confined to the point of the speed at which the train was running at the time of the accident."

The cow was killed within the corporate bounds of the City of Omaha, between Pine and Chestnut streets, "about two blocks" from the residence of the defendant in error, and a short distance from "Boyd's packing house." Aside from the business being done by the railroad company, this was all that was disclosed on the trial as to the character of that particular locality to distinguish it as an inhabited or business part of the city. Such being the case, there was no ground even for the jury to have found, as matter of fact, that a speed of eighteen miles an hour, the highest rate testified to, was at all unusually dangerous, much less for the court to charge, as a matter of law, that it was "gross negligence."

In this sort of action, whether the injury be done within or without a city, doubtless the rate of speed may be of great importance in determining whether there was in fact negligence on the part of those in charge of the train, and responsible for its movements; but speed alone, unconnected with any other fact or circumstance, and more especially where it is not shown to have been unusual, has never, that we are aware of, been held sufficient to show gross negligence. Besides, it must be apparent upon the slightest reflection that no arbitrary rule as to the rate of speed at which a train of cars may not be run, with due regard for the safety of persons and property, ·can be applicable to all portions of a town or city alike. Evidently a rate which in one portion, or under certain circumstances might be entirely reasonable, in another and more thickly inhabited portion, or under different circumstances, would very justly be deemed unwarrant-

able, and evince a most reckless disregard for the rights, both of persons and property.

As showing that speed alone, even although it be at an unlawful rate, is not sufficient to fix a liability for an injury, the case of *Brown, Admr. v. The Buffalo and State line R. R. Co.*, 22 N. Y., 191, is in point. That was an action for damages caused by the killing of the plaintiff's intestate at a street crossing in the city of Buffalo. It appeared that there was an ordinance prohibiting the running of trains within the city faster than a certain rate, with a fixed penalty for exceeding it. On the occasion of the injury complained of, the speed of the train was greater than the ordinance permitted, and the court charged the jury that this fact alone constituted negligence on the part of the railroad company, for which it was liable, if the intestate were himself without fault. This instruction the court of appeals held to be erroneous, and ordered a new trial. See also on this point *C. O. R. R. Co. v. Lawrence*, 13 Ohio St., 66.

Another instruction given at the request of the defendant in error, we consider erroneous, in view of the conceded facts of the case. It is as follows : "If the jury shall find that the killing was done by the defendant's employees at the time charged in the petition and through the negligence of the defendant's employees, then the plaintiff must recover, unless the jury also find that the plaintiff was guilty of contributory negligence."

The judge of his own motion had already told the jury that if "the plaintiff permitted his cow to stray upon the railroad track in question" and while so straying received the injury, "then the plaintiff was guilty of contributory negligence, which would preclude his recovery, unless the defendants were guilty of *gross* negligence, which caused the injury." And in this connection gross negligence was defined to be "the want of ordinary care." The fault to be found with this charge is, first, that it submitted to the jury

the question of gross negligence on the part of the rail-
road company, of which there was, as we have seen, no
evidence whatever; and, secondly, the question of con-
tributory negligence on the part of the owner of the cow,
of which there was no doubt, he having himself testified
to the very state of facts which the judge said would
amount to contributory negligence, viz: permitting his
cow to stray upon the railroad track, which she did on
the occasion of the injury.

Turning to the testimony of the defendant in error, on
this point, we find the following: "I lived about two
blocks away from where she was killed. She had not
been in the habit of running on this ground to feed. I
fed her at home. She was turned out that morning. I
believe my boy turned her out, and gave her water out-
side. She was turned loose for water. We did that every
morning. Sometimes we have a well there, but there was
not, all the time, water enough in it to give water to the
cow. The tracks was between my house and the river.
She had to cross these tracks to get to the water.    *    *
*    *    I did not have anybody to watch her, only the boy
sometimes. This time she was within two blocks of the
house, and the boy came in to get his dinner.    *    *    *
I told the boy to watch her, and I don't know whether
he was watching her or not. At the same time it hap-
pend, we was eating our dinner, and the boy was eating
dinner too. All the family was in the house."

Thus it was conclusively proved by the testimony of
the owner of the cow himself, that, knowing full well the
great risk he ran in so doing, he actually turned her loose
in the immediate vicinity of these railroad tracks, and
left her to wander unattended and uncared for whitherso-
ever she would. Such being the unquestioned facts be-
fore the jury respecting the owner's negligence, and there
being, as we have shown, no evidence of *gross* negligence
on the part of the railroad company, the first instruction

requested on behalf of the plaintiff in error, viz: that on "the evidence adduced on the trial, there could be no recovery," ought to have been given, or a non-suit ordered. There was nothing for the jury to pass upon. For these reasons the judgment must be reversed and a new trial ordered.

REVERSED AND REMANDED.

MAXWELL, CH. J., dissenting.

This is an action brought by Wendt against the railroad company to recover the value of a cow belonging to him, which was killed by a locomotive of the defendant, while making a running switch near Boyd's packing house, in the city of Omaha. The petition is framed upon the theory that there can be no recovery in such case except for gross negligence on the part of the railroad company, and the rulings of the court and instructions given were all based on that view of the law. A verdict for $33.50 was returned in favor of Wendt, upon which judgment was rendered. The company bring the cause into this court by petition in error.

That there are sufficient errors in the record to justify a reversal of the case on behalf of Wendt, had he laid the proper foundations for a review, there is no doubt. But he makes no complaint. As the statute does not require a railroad company to fence its tracks within the limits of a city or village, it is not responsible for injury to domestic animals caused by its trains within such corporate limits, unless it has been guilty of negligence. One object of a railroad is the transportation of persons and property at a high rate of speed by means of engines and cars, and this must necessarily be dangerous to cattle going upon the track. To lessen this danger, all railroads in this state which have been in operation six months, are required to fence their track, except within the corporate limits of a city or village, and the failure

to do so will make them liable in any event for stock injured on that part of the road required to be fenced, while at crossings and such portions of the track as are within the limits of a city or village, they are liable for want of ordinary care.

It may be conceded that a railway company has a right to regulate the management and conduct of its business with reference to the security of persons and property in its charge and the meeting of reasonable appointments in regard to them, and that such company need not presume that cattle will be permitted to stray upon the track. It will also be conceded that the company has a right to the exclusive use of its track, precisely the same as the owner of a farm has to its free use and enjoyment. But a railroad must necessarily be crossed at short intervals by public roads, upon which the public have a right to travel, and within the limits of a city is necessarily crossed by many public streets, and as the business of running cars is particularly dangerous to those crossing such roads and streets, great care should be required of those having the management of trains. And the law will not permit the company to commit an injury to stock of another straying upon the track, which may be avoided by the exercise of ordinary care.

In the case of *C. & Z. R. R. Co. v. Smith*, 22 Ohio State, 244, an instruction that " the defendant had the right to the free and unobstructed use of its railroad track, and that the paramount duty of its employees was the protection of passengers and property in the trains, and the trains itself; but this being their paramount duty, they were bound to use ordinary care and diligence so as not unnecessarily to injure the property of others," was held correct. See also *Ill. Cent. R. R. Co. v. Middleworth*, 46 Ill., 494. *Bemis v. Conn.*, 42 Vt., 375. *Isbul v. N. Y. R. R. Co.*, 27 Conn., 393. This is undoubtedly

a correct statement of the law, although there are decisions that seem to hold that stock straying upon the track may be killed with impunity. The maxim of the law is, " enjoy your own property in such manner as not to injure that of another person." This applies to all owners of property.

There is sufficient in the record to show that quite a number of people witnessed the accident, and in my opinion there is a clear preponderance of the evidence showing that the engine was run at a speed of eighteen miles per hour. The accident seems to have been caused by the high rate of speed at which the locomotive was running, and such being the case the court was justified in its instruction that eighteen miles per hour at that point would be gross negligence. If this was not a thickly settled portion of the city, it devolved on the defendant below to show that as a matter of defense. The court below permitted the jury to deduct the value of the carcass of the cow killed, although Wendt made no use of the same. It is pretty clear that this deduction was unauthorized by the law. In my opinion Wendt is entitled to a larger judgment than he recovered, but as he does not complain, and as substantial justice has been done, the judgment should be affirmed.