**JACOBE et al. v. GOINGS.  (No. 1663.)**

Court of Civil Appeals of Texas. Beaumont.
March 8, 1928.

Rehearing Denied March 14, 1928.

1. Trial ☞352(4)—Refusal to submit issue of negligence of driver of car in which plaintiff was passenger, not raised by evidence, was proper.

In suit for personal injury by passenger in automobile with which defendants' automobile collided, refusal of defendants' requested issues and charges submitting negligence of plaintiff's son as driver of the car in which she was a passenger was not error, where, under evidence, no issue of his negligence was raised.

2. Trial ☞350(6)—Refusal to submit negligence of plaintiff's son in driving car in which plaintiff was passenger held proper, where he used car on master's orders.

In action for personal injury by passenger in automobile with which defendants' automobile collided, refusal of requested issues and charges submitting negligence of plaintiff's son in driving car in which she was passenger was not error, where the son was in the service of another as an employer, and was driving his mother to work under orders of his master, and his negligence, if any, under circumstances, could not be imputed to her.

**3. Guardian and ward ⊂⊃29—Where minor is lawfully in service of third person, his legal guardian cannot lawfully interfere nor direct discharge of his duties.**

Where a minor is lawfully in the service of a third person, he is under duty of obedience to his master, and his legal guardian cannot lawfully interfere or direct discharge of that duty.

**4. Negligence ⊂⊃93(3)—Where right of control did not follow from relation of parent and child, son's negligence could not be imputed to mother.**

Where plaintiff, riding in an automobile which was driven by her son, was injured in collision with defendants' automobile, since the son was acting on orders of a third person as his employer in taking plaintiff to work, plaintiff's right of control did not follow from the relation of parent and child, and hence son's negligence, if any, could not be imputed to plaintiff because of relationship.

**5. Negligence ⊂⊃122(1)—Defendants had burden to show between plaintiff and her son as automobile driver either relation of joint enterprise or master and servant.**

Where plaintiff, while riding in an automobile driven by her 16 year old son, was injured in collision with defendants' automobile, defendants had burden to show between plaintiff and her son either relation of joint enterprise or master and servant, to impute son's negligence to her, since only on such grounds can negligence of automobile driver be imputed to other occupants.

**6. Negligence ⊂⊃93(3)—No joint enterprise existed between mother and son, where she was guest of automobile owner for whom son was driving.**

In action for personal injuries in collision between defendants' automobile and automobile in which plaintiff was riding, and which was being driven by her son, no joint enterprise was shown between plaintiff and her son, since evidence showed that she was guest of automobile owner under whose direction son was driving the car and taking her to work.

**7. Negligence ⊂⊃93(1)—Negligence of automobile driver cannot be imputed to invited guest.**

The negligence of the driver of an automobile cannot be imputed to an invited guest.

**8. Damages ⊂⊃163(1)—Damages cannot be assessed for future physical or mental suffering, unless there is proof that plaintiff will be subjected thereto.**

In personal injury action, damages could not be assessed for future physical and mental suffering claimed by plaintiff, unless it appears reasonably probable from proof that she would be subjected to such future physical and mental suffering.

**9. Damages ⊂⊃221 — Submission of issue of future physical and mental suffering held proper; it being reasonably probable under evidence plaintiff would be subjected thereto.**

Where, in personal injury action, it was shown that, as result of collision, a hole was broken in plaintiff's skull, which had not healed at time of trial, court did not err in submitting issue as to damages for future physical and mental suffering, since it was reasonably probable that plaintiff would be subjected to future physical and mental suffering.

**10. Interest ⊂⊃39(3)—Judgment should bear interest at 6 per cent. per annum from date thereof, and not from date verdict was rendered (Rev. St. 1925, art. 5072).**

A judgment, under Rev. St. 1925, art. 5072, should bear interest at 6 per cent. per annum from date of entry or rendition thereof, and not from date verdict was rendered.

Appeal from District Court, Harris County; Roy F. Campbell, Judge.

Action by Mrs. Pearl Goings against R. L. Jacobe and another, as copartners. From a judgment for the plaintiff, defendants appeal. Judgment reformed, and, as reformed, affirmed.

Fouts, Amerman, Patterson & Moore, of Houston, for appellants.

Sidney Benbow and Hunt, Teagle & Moseley, all of Houston, for appellee.

WALKER, J. This was a suit by appellee, Mrs. Pearl Goings, against appellants, Howard and R. L. Jacobe, as partners, for personal injuries suffered by her as the result of a collision of appellants' automobile with the automobile of Mr. J. W. Sutton, in which she was a passenger, and which was being driven by her sixteen year old son, George, at the time of the collision. The collision occurred on one of the public streets of Houston. It was admitted that appellee's injuries resulted from the collision of the car in which she was riding with appellants' automobile, which, at the time, was being driven by their servant, L. B. Jacobs. In answer to special issues, the jury found that L. B. Jacobs, at the time and place of the collision, was operating appellants' automobile at a greater rate of speed than was reasonable and proper, considering the state of the traffic on said street at said time, in view of the surrounding circumstances; that this was negligence and a proximate cause of appellee's injury; again they found that in driving and operating the automobile along and upon said public street, and near the crossing of Welsh avenue and the place in question, L. B. Jacobs failed to keep a proper lookout for other automobiles which might be coming on Van Buren street, as was the car in which appellee was riding; that this failure to keep a proper lookout was negligence, and a proximate cause of appellee's injuries. Again they found that, at the time and place in question, on entering the intersection of Welsh avenue and Van Buren street, L. B. Jacobs drove and operated appellants' car on the left-hand side of Van Buren street; that this act was negligence, and a proximate cause of appellee's injuries. Appellee's damages were fixed in the sum of $5,000, and judgment was entered

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in her favor for this sum. The case is properly before us on appeal.

[1] Appellants make no attack on the verdict of the jury convicting them of negligence, but assign error in the refusal of certain requested issues and charges submitting to the jury the negligence of appellee's son in driving the car in which she was a passenger, all of which were refused, and such negligence was in no way submitted to the jury. It was the contention of appellants that the issue of negligence was raised against appellee's son, and that such negligence was imputed to her, by reason of the natural relation between them, and also on the ground that as an issue of fact they were engaged in a joint enterprise. These issues were raised by their answer, and were reflected in the special issues requested and refused. As summarizing the facts on these issues, we give in full the statement from the briefs of both parties.

From appellants' brief:

"Appellee testified:

"I am the plaintiff in this case. On or about the 27th of January, of 1927, I was in an automobile accident in the city of Houston. I was riding in a Buick car. My son George was driving it. I had this accident on Welch street. Jacobe Brothers' car struck us. It struck us on Van Buren; we were on Welsh. We were going to town. My son George was driving the car. He is sixteen years of age. The car in which we were riding belonged to Mr. J. W. Sutton. With reference to how it is we were riding in the car of Mr. Sutton, he had control of George, my son, and he was staying there as one of the family. With reference to how I happened to be in the car and where I was going, I was going to work for Mrs. Geisel, she lives at 1024 La Branch Street. I got in this car at the house where I live. * * * With reference to which side of the car did it come from, my right side or the left. I was sitting on the right-hand side of the car."

"The boy was taking me to work; that was the purpose of the trip, going to work. After he took me to work, he was going back to Mr. Sutton's. No one else was with us in the car. With reference to your question, that is the reason I got the car from Mr. Sutton to go to work; he had control of the car, and had control of George; he told George to take me to work."

"With reference to how it is we were riding in the car of Mr. Sutton; he had control of George, my son, and he was staying there as one of the family. With reference to how I happened to be in the car, and where I was going, I was going to work for Mrs. Geisel, she lives at 1024 La Branch street. I got in this car at the house where I live."

"I do not know much about operating automobiles; I have run them some. At the time of this accident my son had not driven that car in any manner to attract my attention as to a high rate of speed. Just prior to the collision, from the time I got in the car he had been operating it at about 15 miles per hour, I guess. There had been nothing done by him in handling the car to make me uneasy or put me on guard of any danger from the operation of the car; he drove a car over two years, and did not have an accident. Mr. Sutton told him he could take the car to take me to work; I did not have control of it. He did not have anything to do at this lady's house; he was taking me to work. That is the reason I went."

From appellee's brief:

"J. W. Sutton was the owner of a Buick car. Plaintiff's son had been driving Sutton's car for about two months. The car in which plaintiff was riding belonged to Sutton. Plaintiff's son was staying with Sutton as one of the family. Mrs. Goings got in the car at the place where she lived to go to work for a Mrs. Geisel.

" 'Mr. Sutton told him he could take the car to take me to work, I did not have control of it.'

"Mrs. Goings testified:

" 'The boy was taking me to work. That was the purpose of the trip, going to work. After he took me to work, he was going back to Mr. Sutton's. No one else was with us in the car. With reference to your question, that is the reason I got the car from Mr. Sutton, to go to work. He had control of the car, and had control of George; he told George to take me to work.' "

"Jacobs, witness for defendant, testified:

" 'I first saw this car when I was practically in the intersection of the street on the north side.

" 'With reference to how fast the car being driven by Goings was going with reference to speed, I could not tell; he was going over 20. I could not tell exactly, but he was going faster than the law allows; I know he was going at least 30 miles per hour, was my best knowledge. I did not get to observe him any length of time. That is my best judgment.

" 'There was just a few seconds time between the squeak and the collision, I would say two seconds. I had time to turn my head, and then he hit. I did not see him until I heard the squeak. I did not decide he was going 30 miles an hour. I said about that. With reference to me not saying he was going 20, I don't know exactly. I did not see him until I heard the squeak. The collision was almost instant. I did not have time to observe or estimate his speed. I could not tell how fast he was going.' "

Appellee says there is no other evidence in the record on the issue of speed; no evidence on the failure of her son to keep a proper lookout; no evidence that he failed to diminish his speed when approaching the intersection; and no evidence that he failed to apply his brakes.

On the statement as made, which is all the statement made by both parties, we think it clear that the issue of negligence was not raised against young Goings. While Jacobs said that the boy was driving 20 or 30 miles an hour, his evidence shows that this statement was the merest conjecture. He admitted that he did not see him prior to the collision. He said:

"I heard the squeak. The collision was almost instant. I did not have time to observe or estimate his speed. I could not tell how fast he was going."

On this construction of the evidence appellants' charges and issues submitting the

negligence of young Goings were properly refused.

[2] But, if we have incorrectly construed the evidence, and if, in fact, an inference of negligence could have been drawn against young Goings, then the refusal of the charges was not error. Asserting that George Goings was a minor, his mother was a widow, and he was guilty of negligence, appellants say that his negligence was as a matter of law imputed to appellee. Appellants' proposition is that the negligence of a minor in driving a car when accompanied by his legal guardian is imputed to the guardian as a matter of law, and that for the reason that "the right of control" follows as a matter of law because of the legal relation between the minor and his guardian. Appellants' proposition recognizes that negligence cannot be imputed, except where the right of control exists, but, as stated, they say that the "right of control" follows as a matter of law. Applying their propositions to the facts of this case, appellants say that Mrs. Goings, being the legal guardian of the person of her minor son, George, had the right to control his acts in driving the car, and therefore his negligence in driving the car must be imputed to her as a matter of law; that "the right of control" between Mrs. Goings and her son was not a question of fact, but, being together, the right followed as a matter of law, being essentially inherent in their relations.

[3] Appellants' proposition is not sound. The right of control does not always follow as a matter of law. That right may be in another, and lawfully exercised by him, even in the presence of the legal guardian. A minor lawfully in the service of a third person is under the duty of obedience to his master, and his legal guardian cannot lawfully interfere nor direct the discharge of that duty. George Goings, with his mother's consent, was in the service of Mr. Sutton. He was driving his mother to her work under orders of his master. His possession of the car and right to drive it was acquired from his master. It was beyond the control of his mother. She had no right to interfere; no authority over his acts. In driving his mother, he was not discharging any primary duty owed by him to her, but to his master. He was simply Mr. Sutton's servant driving his guest to her work. Though she was the mother of George, with all the legal rights flowing from that relation, on the undisputed facts in this case, she had no right of control over her son because of that relation. In discussing the legal proposition advanced by appellants, it was said in Buckler v. City of Newman, 116 Ill. App. 546:

"The mere fact that the relationship between the driver of a vehicle and a person riding thereon was that of mother and son, does not establish as between them the relation of master and servant so as to render the negligence of the son acting as driver imputable to the mother."

Again, in Craig v. Chicago, etc., Railway, 97 Neb. 586, 150 N. W. 648, it was said:

"The relation of parent and child is not the determining factor. Johnson v. City of St. Joseph, 96 Mo. App. 663, 71 S. W. 106."

[4, 5] Since the right of control did not follow from the relation of parent and child, George's negligence, if any, cannot be imputed to his mother merely on that relation. Appellants rested under the burden of showing between appellee and her son either the relation of joint enterprise or master and servant. On no other grounds in this state can the negligence of the driver of an automobile be imputed to the other occupants. The rule of liability between the driver of a private conveyance and its other occupants was thus announced by our Supreme Court in Railway Co. v. Kutac, 72 Tex. 652, 11 S. W. 130:

"Applied to private carriers, the rule is said to be that, if the relation of joint enterprise or of master and servant exists, then the negligence of one joint enterpriser or servant is imputable to the other joint enterpriser or to the master; but a mere guest, as in this case, is not a master or a joint enterpriser, nor can the negligence of the host or his servants be imputed to the guest."—citing Gray v. Railroad Co., 22 Am. & Eng. R. Cases, 355.

[6, 7] Admittedly, the relation of master and servant did not exist between appellee and her son. But appellants say:

"We have a situation where a jury could find that a parent borrowed a car and secured her son to run the same for the purpose of taking her to town to her work,"

—and on that assumption infer the issue of joint enterprise. There is not a scintilla of evidence in the record to support appellants' inference. On the facts of this case, as we have already said, the relation between Mrs. Goings and her son was that of driver and guest; she being the guest of the owner of the car. She was not in a situation, nor did she have the right, to assume the control of the car. It is the settled law of this state, as announced in the Kutac Case, supra, and all other cases on that proposition, that the negligence of the driver of an automobile cannot be imputed to an invited guest, as such.

There was no evidence to support appellants' proposition that George Goings "could have avoided the accident by the use of the means at hand, consistent with his own safety and that of his passenger, after becoming apprised of the imminent collision and of the peril to all parties concerned." Nor was there any evidence to support appellants' proposition "that, regardless of negligence of the defendant, the plaintiff's injuries are solely attributable to the negligence of her driver, and without his negligence

they could not have occurred." Appellants' deduce these propositions solely from the evidence that we have taken from their brief as given, supra.

[8, 9] Appellants assert a sound legal proposition when they say that damages cannot be assessed against the defendant for future physical and mental suffering claimed by plaintiff, unless it appear reasonably probable from the proof that plaintiff will be subjected to such future physical and mental suffering. But the evidence in this case raised that issue, and therefore the court did not err in submitting it to the jury. It was shown on the trial of the case that, as a result of the collision, a hole was broken in the skull of Mrs. Goings, which had not healed at the time of the trial. She testified:

"I suffer a great deal. I did not know much for about two weeks. It was two weeks before I knew I was anywhere. After that two weeks I suffered, and a week after that I could not sleep day or night my head hurt so bad. My head hurts me to work now. If I start to stoop down my head swims, and I think I am going to fall over. I will not be able to work any more."

Dr. Taylor, in describing her injuries, testified:

"It was a fracture, and was pressing on the brain. There was some injury to the brain as well. If she still complains of injury, that is, of dizziness from stooping and of her inability to work, I would say that was the result of the injury. Mrs. Goings does not look to be a very strong, robust woman."

George Goings testified:

"I have seen my mother frequently since this accident and injury. Before the accident she was in good health. At the time of the collision she had a fractured skull, and Dr. Taylor took out a piece of the skull about as large as a 50 cent piece. I have seen her frequently since. She has been awkward since, and has not had much to do, and does not take much energy in anything, and does not have much pep. She has not worked since the injury. I have seen her attempt to work around home. If she tried to do anything, her head goes to swimming and hurts, and she quits, and does not try to do anything because she feels so bad trying to do anything."

This evidence was sufficient to raise the issue that it was "reasonably probable" that appellee would be subjected to future physical and mental suffering.

[10] In entering up the judgment, it was made to bear interest at the rate of 6 per cent. per annum from date the verdict was returned into court. Appellants assign that as fundamental error, asserting that appellee was entitled to legal interest only from the date of the entry or rendition of the judgment, as distinct from that of rendition of the jury's verdict. Article 5072, Revised Statutes 1925, provides:

"All judgments of the courts of this state shall bear interest at the rate of six per cent.

per annum from and after the date of the judgment."

See, also, Morriss v. Hesse (Tex. Com. App.) 231 S. W. 317.

The judgment of the court will be reformed in this respect, but, since this error was not called to the attention of the trial court, the costs of the appeal will not be taxed against appellee, but against appellants. Reformed and affirmed.