OMAHA & REPUBLICAN VALLEY RAILWAY COMPANY V.
IDA L. KRAYENBUHL.

FILED MAY 19, 1896.    No. 6384.

1. **Railroad Companies: SPEED OF TRAINS.** In the operation of a railway train outside of towns and villages, no rate of speed, however great, is alone sufficient evidence to establish negligence. *Burlington & M. R. R. Co. v. Wendt,* 12 Neb., 76, followed.

·2. **Fellow-Servants: EMPLOYES OF RAILROAD COMPANY.** The foreman of a section crew and an engineer in charge of a locomotive drawing a train not connected with the work of the section men are not fellow-servants within the meaning of the rule forbidding a recovery for injuries caused by the negligence of a fellow-servant. *Union P. R. Co. v. Erickson,* 41 Neb., 1, followed.

3. **Witnesses: FALSE TESTIMONY.** The maxim, *falsus in uno, falsus in omnibus,* applies only where a witness has knowingly and willfully testified falsely as to a matter of fact. *Buffalo County v. Van Sickle,* 16 Neb., 363, followed.

4. **Railroad Companies: SIGNALS.** It is error to instruct a jury that it may consider whether or not statutory highway signals were given by an approaching train in determining whether the train was in other respects negligently operated.

5. ———: **OBSTRUCTION ON TRACK: DUTY OF SECTION-HAND.** A section man cannot be charged with contributory negligence because he remained upon the track for the purpose of removing an obstruction endangering an approaching train, when he might have saved himself by abandoning the track and leaving the train to its fate.

ERROR from the district court of Butler county.    Tried below before WHEELER, J.

*J. M. Thurston, W. R. Kelly,* and *E. P. Smith,* for plaintiff in error.

*E. R. Dean, A. J. Evans,* and *E. W. Hale, contra.*

IRVINE, C.

This was an action brought under chapter 21, Compiled Statutes, by Ida L. Krayenbuhl, as administratrix of the

estate of John Krayenbuhl, deceased, against the Omaha & Republican Valley Railway Company, to recover on account of injuries resulting in the death of said decedent. There is no necessity of reviewing the whole case in detail, because many questions presented in the district court have since the trial there been decided by this court in other cases. A brief statement of the evidence is, however, essential to a consideration of the questions which we deem it necessary to pass upon.

John Krayenbuhl, the deceased, was a section foreman in the employ of the railway company. During the forenoon of the 18th day of January, 1892, he was proceeding westward along the track of the railway company on a hand-car carrying a railway rail, and accompanied by one man under his direction and control. Snow was falling and a wind prevailed. The depth of snow and the velocity and direction of the wind are matters concerning which the evidence is conflicting; but these facts are not very material to the questions of law presented. The track, after pursuing a straight course to the westward for some distance, crossed a highway, and soon thereafter curved to the south, following in a general way the meanderings of a stream. In its course it passed through some cuts. Krayenbuhl and his companion, Martin, upon entering these cuts found that the track was obstructed by snow. Krayenbuhl sent Martin back toward the east with a flag to warn approaching trains, and proceeded to shovel snow from the track ahead of the hand-car, pushing the hand-car on as he progressed. When Martin, carrying the flag, had gone something over a hundred yards east of the hand-car, a train consisting of a locomotive and way car, running at a speed estimated by different witnesses at from eighteen to forty-five miles per hour, approached from the east. Martin signalled the train to stop and Krayenbuhl, evidently on hearing the train approach, removed the rail from the hand-car and was in the act of removing the hand-car from the track, when the train struck him, breaking his neck and

killing him.   The negligence alleged was in running the
train at a dangerous rate of speed, in failing to give warn-
ing of its approach, and in disregarding the signal given
by Martin.   There are some other allegations of negli-
gence, but proof in support thereof was excluded by the
district court, and these it is not necessary to state.   The
point where the accident occurred was not within any
town or city, and it has been repeatedly held that no rate
of speed is of itself negligence under such circumstances.
(*Burlington & M. R. R. Co. v. Wendt*, 12 Neb., 76; *Chicago, B.
& Q. R. Co. v. Grablin*, 38 Neb., 90; *Missouri P. R. Co. v. Han-
sen*, 48 Neb., 232.)   The foundation of the action must
therefore be in failing to give signals of the approach of
the train and in the alleged failure to obey the signal of
Martin to stop.   A question much argued is as to whether
the deceased and the engineer in charge of the train were
fellow-servants.   If they were so as a matter of law, a
summary disposition of the case might be made; but the
rules announced in *Union P. R. Co. v. Erickson*, 41 Neb., 1,
are applicable to this case and determine the question
adversely to the contention of the railway company.   We
are therefore required to consider the case more with re-
gard to details than the principal arguments of the rail-
way company, if well founded, would require.

There is a conflict in the evidence as to whether the
statutory signals were given of the approach of the train
to the highway east of the point where the accident oc-
curred.   Several witnesses testifying on behalf of the
plaintiff say that they heard no such signals.   The engi-
neer and conductor both testify, however, that the statu-
tory signal was given.   The court instructed the jury in
effect that the highway signals were for the benefit of
persons traveling upon the highway, and that the failure
to give them would not tend to charge the railway com-
pany in this case.   In view of the decision, rendered since
the trial, in *Chicago, B. & Q. R. Co. v. Metcalf*, 44 Neb., 849,
these instructions were too broad; but the error was
prejudicial to the plaintiff rather than to the railway com-

pany. But the court followed these instructions by the following: "However, if you find from the evidence that the law governing railway trains on their approaching highway crossings was not complied with in this case, and that the whistle was not blown or the bell rung on the train in question, approaching Foxe's crossing, then such fact should be considered by you as affecting or touching the credibility of the witnesses for the defendant who testified on this point, and also in considering by you whether or not said train was being run and operated in a careful and proper manner or otherwise." This instruction was prejudicially erroneous as to the railway company in two respects: In the first place, it was a distinct direction to the jury to consider whether or not the signals had been given as affecting the general credibility of the witnesses for the defendant who testified on this point. Both engineer and conductor had testified that the signals were given. The engineer testified that it was a stormy day, with a strong wind, while other witnesses testified that it was reasonably clear and the wind not strong. The engineer testified that the engine was covered with snow; that snow was banked up against the front windows of the cab and that the only lookout that he could maintain was through a side window; that in keeping such lookout his face had been frozen; that the train passed from time to time through snow-banks which completely obstructed his view and compelled him to withdraw his head; that he had passed through such a snow-bank immediately before seeing Martin with the flag; that he saw Martin when the latter was not more than thirty feet from him, and immediately took all available steps to stop the train. Witnesses for the plaintiff had testified that no attention whatever was paid to Martin's signal, and that the train proceeded without apparent check until the accident occurred. The effect of giving the instruction complained of was that the jury should examine into the question whether a signal had been given on approaching Foxe's crossing, and upon that fact to de-

termine the engineer's credibility upon all other facts in the case; and this without regard to whether the engineer's testimony as to having given the signal was willfully false or otherwise. The maxim, *falsus in uno, falsus in omnibus*, applies only where a witness has knowingly and willfully testified falsely as to a matter of fact. (*Buffalo County v. Van Sickle*, 16 Neb., 363; *Stoppert v. Nierle*, 45 Neb., 105.) In the second place, the instruction was erroneous because by its last clause it directed the jury that they should consider whether or not the highway signal had been given, as determining whether or not the train was generally run and operated in a careful manner. As already indicated, under the circumstances the failure to give the highway signal may have been important in determining whether the railroad company's negligence in not giving it caused the injury; but it could have no possible effect in determining whether or not the railroad company had been negligent in other respects. The jury would have no right to infer a negligent operation of the train in other particulars from a failure to give this signal, but the instruction was that it might do so. For the error in this instruction the judgment must be reversed.

We cannot, however, let the case rest here without disposing of another question which is likely to arise upon a new trial. The railroad company, by its offers of evidence and by tendering instructions, contended that if Krayenbuhl could have saved his life by abandoning the car upon the track and stepping aside, he was compelled to do so by virtue of rules of the company and general principles of contributory negligence. Instructions to this effect were refused and their refusal is assigned as error. The court was undoubtedly right in refusing these instructions. To have given them would have been contrary to law and would have countenanced a doctrine closely bordering upon brutality. A hand-car with a railroad rail upon it, when struck by a rapidly moving train, might have caused a wreck costing the lives of

many people.   Krayenbuhl did right in remaining upon the track, after he heard the train approaching, for the purpose of removing the rail and afterwards the car if possible.   Such conduct was not negligence; it was heroism.   No law should be announced which would tend to deter railway employes from acts of such a character, and, so far as this court is concerned, no such law will be announced.

REVERSED AND REMANDED.