JOHN M. WHITE, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED MAY 17, 1913. No. 17,182.

1. **Railroads: NEGLIGENCE.** It is not negligence for a railway company to operate a passenger train at the rate of 50 miles an hour, during a clear day, in the open country, where there are no obscure crossings.

2. ———: ———: KILLING LIVE STOCK. The mere fact that an animal is killed upon the public highway at a railroad crossing is no evidence of negligence on the part of those in charge of the train.

3. ———: ———: EVIDENCE. Nor can negligence be established by inference or conjecture in contradiction to the testimony of a competent and unimpeached eye-witness.

4. ———: ———: DUTY OF EMPLOYEES. The duty of an engineer and fireman of a locomotive, to keep a lookout for animals on the track, is not their sole duty, but is such as is consistent with their other duties.

APPEAL from the district court for Furnas county: ROBERT C. ORR, JUDGE. *Reversed.*

*Byron Clark* and *Arthur R. Wells,* for appellant.

*John Stevens, contra.*

FAWCETT, J.

From a judgment in the district court for Furnas county, in favor of plaintiff, for the value of a horse killed by one of defendant's passenger trains, defendant appeals.

The petition alleges that on April 27, 1907, a horse belonging to plaintiff, of the value of $100, "went upon the railroad track of the defendant, at a point where the right of way of the defendant was fenced, and not within the corporate limits of any city or village, the same being in Furnas county, Nebraska, and the said defendant, in the operation of one of its trains on said railroad, negligently and wilfully struck and killed said horse; that said kill-

ing occurred in the daytime, at a time and place where the persons in charge of said train had a clear and unobstructed view of said track, and the engineer in charge of said train, by the exercise of ordinary care and caution, could have prevented such collision, but the said engineer negligently and wilfully failed to use any care or precaution to prevent said collision." The answer admits that the location described in plaintiff's petition is not within the corporate limits of any city or village, and that the right of way is fenced; denies all allegations not specifically admitted; and pleads contributory negligence on the part of plaintiff. The reply is a general denial.

The evidence shows that the crossing where the animal was injured is in the open country and can be seen for a considerable distance in the direction from which the train was approaching. The train was running 50 miles an hour. Plaintiff testified that he was at his home, a little less than half a mile from the crossing; that he saw the train go by, but did not see it hit the horse; that his residence is near enough to the track so that he can always hear the signals made by the engine, such as the ringing of the bell or the blowing of the whistle; that it was about 7 o'clock in the morning. Over the objection of defendant, he was permitted to testify that the engine on the train in question did not whistle for the crossing, "only just when they got amongst the horses. They seemed to give us a little short screech or two, as they usually do when they strike anything," and the bell was not sounded; that it was a nice, bright morning, with no fog.

Mr. Stout, examined as a witness in behalf of plaintiff, testified that at the time the train passed he was at the home of a Mr. Schondler, whose house is about 20 rods from where the horse was struck; that he noticed the train as it passed; that he saw the horses (five in number) "on the north side of the track, probably ten or fifteen rods." They fed their horses, and as they were going in to breakfast he saw that the horses were still on the north side of the track, "and we came up the walk, and I saw where

50

the horses were at, and we saw the train coming, and it was coming awful fast. We thought the horses would not go on the track, so we went back to the house. I did not see the engine strike the horse." About five minutes afterwards he went up to the crossing and saw the horse. At that time two of the horses were on the south side and two still on the north side of the track. The injured horse was on its front feet, and seemed to be struck on the right hip. It was then more than 100 feet east of the cattle-guards.

H. O. Beatty, the engineer, was introduced as a witness by plaintiff, and testified that, if he had seen any horse on the track within any reasonable distance, he had means of stopping the train; that the train and engine were equipped with automatic, quick-action air brakes, in working order, which can be applied instantly, and the instant it is applied it diminishes the speed of the train. Upon being examined by defendant, he testified that he remembered hitting the horse that day; that the first he knew of the horse was when the engine struck him; that he felt the jar; that he was going east, and his seat was on the right-hand side of the engine, so that he was on the south side. "Q. When did you say you first knew of this horse being on the track, or near the track, or coming to the track? A. The horse was not on the track. If he had been on the track, I probably would have seen him; that is, if he would have been right on the track." He further testified that the engine was equipped with an automatic bell, and that "I am satisfied the bell was ringing when I passed that crossing. I sounded the whistle at the post. I have no distinct recollection of it any more than it is our general work. We always aim to follow our rules, and we did on that morning. I was attending to the duties of engineer, watching the machinery of my engine, and the crossing and the track ahead. My attention was first called to this horse about the time it was struck, and we were then going at least 50 miles an hour. It would not have been possible after seeing this horse to have stopped

before he was struck." No other witnesses were examined as to the collision.

At the conclusion of plaintiff's case, defendant moved for an instructed verdict. The motion was overruled, and that ruling is the error principally relied upon on this appeal. The motion should have been sustained. In the open country, outside of cities, villages and towns, where there are no obscure crossings, negligence cannot be imputed to a railroad company solely by reason of the speed of its train. *Omaha & R. V. R. Co. v. Talbot*, 48 Neb. 627; *Brown v. Chicago, B. & Q. R. Co.*, 88 Neb. 604. The mere fact that an animal is killed upon the public highway at a railroad crossing is no evidence of negligence on the part of those in charge of the train. *Burlington & M. R. R. Co. v. Wendt*, 12 Neb. 76; *Starke v. Chicago, B. & Q. R. Co.*, 82 Neb. 800; *Cox v. Chicago & N. W. R. Co.*, 87 Neb. 136; *Kennedy v. Chicago, B. & Q. R. Co.*, 80 Neb. 267. Nor can negligence be established by inference or conjecture in contradiction to the testimony of a competent and unimpeached eye-witness. *Kennedy v. Chicago, B. & Q. R. Co.*, *supra*. The duty of an engineer and fireman of a locomotive, to keep a lookout for animals on the track, is not their sole duty, but is such as is consistent with their other duties.

Applying the rules announced in the foregoing cases, we do not see how defendant can ever be held liable for the injury to plaintiff's horse. The only witness who saw the horses prior to the collision locates them 10 or 15 rods from the track. He thought about the train, but he also "thought the horses would not go on the track." At that time the train was coming, and, to use the language of the witness, "was coming awful fast." Had the engineer seen the horses at that time, we think he would have been warranted in thinking, just as Mr. Stout thought, that the horses would not go upon the track. Even if it were established that the whistle was not blown or the bell rung, we do not see how that could make **any** difference, for it is evident from the testimony of Mr. Stout that the

noise of the train itself was sufficient to start the horses in motion. They evidently tried to run across the track ahead of the engine. Two of them got across, the third was struck, and the other two remained on the side where Stout saw them. The one that was struck, according to the testimony of the engineer, was not upon the track. He evidently was trying to get across, but was struck before he really got upon the track. Treating the petition as having stated a cause of action for negligence, which is, to say the least, construing it very liberally, we are compelled to hold that no negligence is shown.

REVERSED AND REMANDED.

BARNES, SEDGWICK and HAMER, JJ., not sitting.