# CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

## JANUARY TERM, 1915.

---

ALVARADO W. CRAIG, ADMINISTRATOR, APPELLEE, V. CHICA-
GO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COM-
PANY ET AL., APPELLANTS.

FILED JANUARY 6, 1915. No. 17,876.

1. **Negligence.** Upon the questions of negligence and contributory negligence, *Craig v. Chicago, St. P., M. & O. R. Co.*, *ante*, p. 426, followed.

2. ———: IMPUTED NEGLIGENCE. The mere fact that the relationship between the driver of a wagon and the person riding therein is that of mother and son does not, of itself, as a matter of law, make the negligence of the driver imputable to the mother.

3. ———: ———: QUESTION FOR JURY. Where it is contended that a son whose negligence contributed to the injury was his mother's agent or servant, so that his negligence is imputable to her, and the evidence is conflicting, the question is for the jury.

4. **Action for Death: COUNTERCLAIM.** A counterclaim for damages for injury to the rolling stock and roadbed of the defendant railway company, caused by the negligent act of the driver of a vehicle, cannot be asserted against the beneficiaries of an action under Lord Campbell's Act.

5. **Damages.** Evidence examined, and a verdict of $10,000 for the death of the plaintiff's decedent *held* not to be so excessive as to justify setting it aside as the result of passion or prejudice.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed*.

(586)

*George W. Peterson, Brome & Brome* and *James B. Sheean,* for appellants.

*Sullivan & Rait* and *W. T. Thompson,* contra.

LETTON, J.

This action is brought by the administrator of the estate of Catherine E. Craig, for the benefit of himself and the next of kin, to recover damages for the death of his wife. Judgment was rendered in his favor for $10,000. Defendant appeals.

The principal facts with relation to the accident whereby Mrs. Craig lost her life are set out at length in the opinion in the case of *Craig v. Chicago, St. P., M. & O. R. Co., ante,* p. 426. It will be unnecessary, therefore, to consider the claim of defendant that the evidence does not support a finding that it was guilty of negligence, that point having been decided adversely to its contention in the former case. We adhere, also, to the view expressed as to the defense of contributory negligence with respect to Zell Craig. Defendant contends that the negligence of Zell Craig must, as a matter of law, be imputed to Catherine Craig, and that, if this claim is decided adversely, then the damages awarded are so excessive as to have been the result of passion and prejudice on the part of the jury. In both cases defendant asserts that the court erred in not receiving evidence in support of its counterclaim for damages to its engine, train and track resulting from the derailment caused by the collision. The latter point was not considered in the other case, but will be considered briefly here.

Even if a tort could be offset against a tort, such a counterclaim as this cannot be asserted.

The plaintiff is suing in his representative capacity as a trustee. The action is not brought for the benefit of the estate of the deceased, nor can the amount, if any, recovered be made subject to any claims of creditors. The cause of action is one created by statute. Its purpose is to prevent those persons who had the right to look forward

to the services of, or support from, the deceased, and who will suffer a pecuniary loss by the death, from being deprived thereof by the wrongful act of the defendant. If Zell Craig, as the agent or servant of Alvarado W. Craig in the driving of his team, recklessly and carelessly caused injury and damage to another, under the doctrine of *respondeat superior*, Alvarado W. Craig might be liable personally, but he could not be liable in a representative capacity. In such a case, if Zell Craig were the agent or servant of the mother, whether her estate could be reached or not, the fund created for the benefit of her heirs and next of kin could not be touched. The court, therefore, properly rejected this evidence.

Upon the question of imputed negligence, the court gave the following instructions:

"(6) If you find from the evidence that Zell Craig was on the day of the accident sent to Lyons by his father, on his father's business, driving his father's team, and that Catherine E. Craig went on business of her own, without any authority or duty with respect to the driving of the team, and without any reason to suspect the want of care or skill on the part of her son, then and in that case, his negligence, if any there was, could not be charged or imputed to her, and the relation of mother and son would not alone and of itself afford a necessary inference that she possessed the right, or was charged with the duty, to control or direct the driving of the team.

"(7) When a passenger, while riding in a private vehicle with the consent of the driver or owner thereof, is injured by the concurring negligence of the driver and another, the negligence of the driver is not imputed to the passenger, so as to prevent a recovery of damages for the injury sustained, unless he had authority to control, or was charged with a duty to control, such driver, or had reason to suspect a want of care or skill on his part. Applying this principle to the case in hand, you are instructed that the negligence of Zell Craig, if any there was, contributing to the accident in question, cannot be charged or imputed to Catherine E. Craig, so as to prevent a re-

covery in this case, unless she possessed the right, or was charged with the duty, to control such driver, or had reason to believe or suspect that there was a want of care or skill on his part."

The complaint is made that "the rule of law thus announced is not applicable to the undisputed facts, and is erroneous." It is also stated that the mother gave the directions as to the grist and the manner in which the corn should be ground, and it is argued that the business at the mill was a joint enterprise for the benefit of the family, but, even if it was not so, that, in the absence of the father, Mrs. Craig was the master or principal and the son was her servant or agent.

The doctrine of imputed negligence has been considered in this state in the cases of *Omaha & R. V. R. Co. v. Talbot*, 48 Neb. 627, *Loso v. Lancaster County*, 77 Neb. 466, and *Hajsek v. Chicago, B. & Q. R. Co.*, 68 Neb. 539. The holding in the *Talbot* case is modified by the *Loso* case. It was held in the *Hajsek* case: "Except with respect to the relation of partnership, or of principal and agent, or of master and servant, or the like, the doctrine of imputed negligence is not in vogue in this state." This is the rule adopted by nearly every state in the Union. *Loso v. Lancaster County, supra.* If there is any doubt or question as to the nature of the relation existing between Mrs. Craig and her son with respect to the management of the team at the time the accident happened, the question is one of fact for the jury. So far as the evidence shows in this case, Mr. Craig was the owner of the farm and carried on the farming operations. It was at his direction that the son went to the mill, it was his team and wagon that was used, and the grist that was to be ground belonged to him. It is true that the miller asked Mrs. Craig how she would like the meal ground, and, housewife like, she indicated her preference; but this does not indicate that the corn was not the property of her husband. Mrs. Craig had not driven a team for ten years. There is nothing to show that she was invested with any authority over her son with respect to the management of the journey. The son went to town up-

on the father's business, and it is shown that the mother desired to go in order to exchange a pair of shoes for a better fitting pair. We cannot say, as a matter of law, that the relation of principal and agent, or master and servant, existed between the mother and son, even though the young man had not arrived at his majority. The son only lacked a month of being 18 years old. He weighed 183 pounds, and was a man in all but years. It has been held that, where a person is a passenger or a guest in a vehicle and it becomes apparent that the driver is taking unusual risks, if the passenger or guest makes no attempt to leave the vehicle or save himself from the threatened injury, he is equally guilty of negligence and cannot recover. *Rebillard v. Minneapolis, St. P. & S. S. M. R. Co.*, 216 Fed. 503, and many cases cited in the opinion; *Trumbower v. Lehigh Valley Transit Co.*, 235 Pa. St. 397. But, in this case there is evidence that, as soon as the young man apparently saw the train and commenced to whip the horses, the mother attempted to seize his arm or the reins, seemingly in the endeavor to prevent the team from crossing the track in front of the locomotive. May not the converse of the proposition apply, and, if the guest or passenger attempts to thwart the negligent act, is this not strong or conclusive evidence that no negligence existed on his part or should be imputed to him?

The relation of parent and child is not the determining factor. *Johnson v. City of St. Joseph*, 96 Mo. App. 663, was a case in which the driver of a wagon in which the plaintiff was riding, which was precipitated into an excavation in a defective street, was her son. It was held that, as it did not appear that the son was in her employment, his negligence could not be imputed to plaintiff, citing *Dickson v. Missouri P. R. Co.*, 104 Mo. 491. In *Buckler v. City of Newman*, 116 Ill. App. 546, the facts were that the plaintiff was riding in a wagon drawn by a team of horses driven by her son, aged 17 years. The wagon wheel dropped into a defect in the highway. As a result the plaintiff was thrown to the ground and injured. The jury were instructed that, if the accident "resulted from a want

of reasonable care and caution for her own safety on the part of the plaintiff, *or the person driving the team,* then the jury should find in favor of the defendant." The court said: "It cannot be said, as a matter of law, that the mere fact that he was her son and a minor gave her such control over him as to make her responsible for his careless driving. The record fails to disclose the ownership of the team and wagon, whether the driver was in her or her husband's employ, or whether she was a passenger by right of ownership of the team and wagon or by invitation or permission of the owner. As we take it, the mere relation of parent and child is not sufficient, but before the negligence of the driver could be imputed to appellant, the relation of either master and servant, or of principal and agent, must have been established." The judgment was reversed. *Peabody v. Haverhill, G. & D. Street R. Co.,* 200 Mass. 277, and cases cited in the opinion.

It is strongly urged that the court erred in permitting the plaintiff to testify as to the value of his wife's services. Mr. Craig testified that his oldest daughter was 20 years of age when the accident happened; that she has since married and moved to Colorado; that the surviving son is not quite 16, and that his daughter Ilene is not quite 14 at the present time. Mrs. Craig was 52 years old and in good health at the time of the accident. They had been married 22 years. She did all the housework, with the help of the girls when they were not at school, made the children's clothes, did the washing, and took care of the milk and butter and poultry. She also instructed the children and helped them with their lessons in school and Sunday school. After giving these facts, the witness was asked what, aside from the care of the children, the value of her services was for taking care of the house, caring for the poultry, making butter, etc. This was objected to because no foundation was laid. The objection was overruled. Mr. Craig then testified that her services were worth about two or three times as much as those of a servant girl to whom you would have to pay $5 to $10 a week, and worth at least $15 a week. We find nothing

prejudicially erroneous in the admission of this evidence. The evidence is not strictly that of an expert. The wages of domestic servants is a matter of common knowledge, and the facts in evidence with reference to the services of Mrs. Craig as housekeeper and in the care and instruction of the children justify the conclusion testified to by her husband.

It is next urged that the verdict is so excessive that it appears to have been the result of passion or prejudice on the part of the jury. No tables of expectancy are in the record, but, according to the brief of both parties, the expectancy of Mrs. Craig was between 19 and 20 years. Assuming as a basis of calculation that her services were worth at the minimum $15 a week or $780 a year, and taking the present value of that sum for the period of expectancy, with interest for the time intervening between the commencement of the suit and the rendition of the verdict, this amounts to about $8,900. Plaintiff urges that this is the minimum value of the services, which the jury was not bound to adopt, and that, if the value of her services is estimated with reference to the testimony as to the wages paid a servant girl and the proof, they were worth two or three times as much, and the present worth of her services would be about $20,000. On the other hand, the defendant, upon the assumption that her services were worth $1 a day or $365 per annum, argues that the present worth would aggregate $3,733, or, if $5 a week be taken as a basis, to $5,167.50. It is impossible to ascertain with accuracy or certainty the pecuniary loss which will be suffered by the husband and children on account of the death of Mrs. Craig. Tables of expectancy show mere averages, but seem to afford as reasonable an index to longevity as has so far been discovered. The beneficiaries may all cease to exist within a year, or they may live far beyond the average duration of life. It is also impossible to place a definite money value upon the services of a wife and mother. The wages of a servant girl or a housekeeper are not always a true index of the pecuniary loss to the husband and children. If the amount fixed by the jury does not con-

vince the mind that it is unjust and entirely dispropor-
tionate to the loss suffered, courts should not, and they are
loth to, interfere with verdicts. The question must be de-
termined under the attending circumstances of each indi-
vidual case. While we are satisfied that the amount as-
sessed is fully as much as the recovery should have been,
we are not convinced that it is so excessive that we are jus-
tified in setting the verdict aside as a result of passion or
prejudice, or that a remittitur should be required.

We find no prejudicial error in the record. The judg-
ment of the district court is

AFFIRMED.

BARNES, FAWCETT and HAMER, JJ., not sitting.