E. MELVIN KENNEDY, ADMINISTRATOR OF THE ESTATE OF HAZEL GRUBB, DECEASED, APPELLANT, v. CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, A CORPORATION, ET AL., APPELLEES.

56 N. W. 2d 446

Filed January 2, 1953. No. 33193.

*Joseph V. Benesch* and *Emmet L. Murphy,* for appellant.

*Chambers, Holland & Groth,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The death of Hazel Grubb was caused by injuries inflicted upon her by a collision in the nighttime of a passenger train of the Chicago, Rock Island & Pacific Railroad Company and a motor vehicle in which she was riding as a guest at a place where the railroad intersected and crossed the public highway on which she was traveling. Appellant sought to recover damages from the railroad company and Roy Ensign, the engineer of the train, on the claim that her death was wrongfully caused by their negligence. A verdict for appellees was the result of the trial in the district court.

The deceased, a resident of Demopolis, Alabama, was at Murdock in October 1950, for a visit with her sister Harriet B. Zabel, and her brother-in-law William H. Zabel. They made a trip to Omaha on October 9, 1950. The return from there to the place of the accident was in the evening, and was made in the automobile owned and operated by Mr. Zabel. He was the only occupant of the front seat. Mrs. Zabel was in the back seat directly behind her husband, and Mrs. Grubb was to her right. The night was clear, calm, and comfortable. The temperature was moderate enough that the glass in each of the front windows was lowered about one-half

its length. The automobile was without defects and operated satisfactorily in all respects. The front glass was cleaned at the start of the return trip and visibility through it was unobstructed. The car was operated on the return journey at a speed generally of 40 to 45 miles an hour.

Mr. Zabel was 64 years of age, had good vision with or without glasses, and had operated a grocery store at Murdock, a village of 225 population, for 16 years. He was familiar with the roads, the intersection of the roads, the railroad, its crossing of highways, the trains of the railroad, and the locations and situations generally in and around Murdock.

There was a north-south highway on or near the east side of the village, and an east-west highway on or near the north side of it. They intersected near the northeast corner but outside of the village. The right-of-way and the track of the railroad company approached and crossed the intersection of the highways at an angle from the northeast to the southwest. The Zabel car approached the intersection of the highways and the railroad crossing from the east traveling on the east-west highway. It was a graveled road of uniform grade for at least one-half mile east of the intersection and railroad crossing, and was in good condition. The train involved in the collision was traveling southwest. The view of a traveler on the east-west highway east of the railroad crossing was to some extent obstructed by a cornfield, trees, posts, and weeds between the highway and the right-of-way of the railroad. But a train on the track moving from the northeast toward the crossing could be seen by a traveler on the highway if he looked towards the north at a point as much as 300 feet east of the crossing, and continuously thereafter as the train proceeded toward the crossing. The rails of the railroad track were visible to a traveler on the highway 75 feet east of the railroad crossing. There was an unobstructed view from 50 feet east of the east rail of the railroad

track to the northeast for a distance of more than 300 feet, and an unobstructed view from 25 feet east of the east rail of the track to the northeast a distance of more than 363 feet.

The driver of the automobile knew that he was approaching the railroad track. About 100 feet from it he reduced the speed of the car and looked in the direction of the railroad track as he approached the crossing. It was then about 11:30 p. m. He knew there was a train scheduled for arrival about that time. He finally reduced his speed to 5 or 10 miles an hour before going upon the crossing. There was nothing to divert his attention and no noise to interfere with his hearing except that made by the operation of his car as it was in motion. He looked two or three times to see that there was no train on the track approaching the crossing while he was traveling from 50 feet east of the crossing until he was within 5 or 10 feet of the railroad track. When he was within 20 or 25 feet of the east rail of the track his speed was such that he could have stopped his car before it traveled more than 2 feet. He did not see or hear the train or any light from it or any signal by bell or whistle. About one-half the length of the automobile was across the northwest rail of the railroad track when the engine struck the right rear part of the car. The speed of the train at the time of the collision was 40 to 45 miles an hour. It had been previously not more than 50 miles an hour. Mrs. Grubb received serious injuries which after some delay resulted in her death.

There was no proof by appellant that his specification of negligence concerning disrepair and the incomplete condition of the crossing-warning sign near the place of the accident contributed to or proximately caused the accident, or that appellees knew or should have known that the automobile in which the decedent was riding was in a position of great distress and peril in time to have by any means avoided the collision. The action of the court in refraining from presenting either of these

charges of negligence to the jury was proper.

The district court correctly submitted two specifications of negligence: (1) That appellees negligently failed to give a signal of the approach of the train to the crossing of the highway by it as the law provides; and (2) that the railroad company negligently failed to equip and maintain the engine of the train with a headlight of the power and in the manner required by law. The applicable provisions of the statute concerning the giving of signals at crossings and for locomotive engine headlights were set out by quotation. §§ 74-573 and 74-583, R. R. S. 1943. The jury was also advised that a violation of any of the provisions thereof was not negligence as a matter of law but was evidence of negligence which the jury should consider with all the other evidence in the case to determine whether or not the appellees or either of them was guilty of negligence. Appellant claims this was error. He asserts that the statute on the subject of giving signals of the approach of a railroad train to a crossing of a highway (§ 74-573, R. R. S. 1943) is a mandatory duty for the protection of human life and that a violation of it is negligence per se. The violation of this kind of a safety regulation established by statute is not negligence as a matter of law but may be considered in connection with all the other evidence in the case in deciding the issue of negligence. Eggeling v. Chicago, R. I. & P. Ry. Co., 119 Neb. 229, 228 N. W. 361; Armer v. Omaha & C. B. St. Ry. Co., 151 Neb. 431, 37 N. W. 2d 607.

The distinction between statutes of this kind and statutes of the class involved in the case of Johnson v. Weborg, 142 Neb. 516, 7 N. W. 2d 65, relied upon by appellant, is clearly made in Stevens v. Luther, 105 Neb. 184, 180 N. W. 87: "Statutes requiring protective devices to be placed upon machinery, upon barbed-wire fences, scaffolding statutes, railroad fencing statutes, fire escape statutes, and other statutes of like nature, impose a mandatory and affirmative duty upon

the owners of such property, and even in states where the violation of speed statutes is held to be only evidence from which negligence may be inferred, the courts generally hold that a failure to perform a mandatory duty so enjoined is negligence per se, and if any person to whom the duty is owed, or for whose protection the statute is enacted, is injured in consequence of such violation, a case is made."

Appellant complains because the district court omitted from its instructions the last sentence of the statute that "Such corporation shall also be liable for all damages which shall be sustained by any person by reason of such neglect." § 74-573, R. R. S. 1943. It is argued that it was the duty of the court to include this and its omission was prejudicial to appellant. The case of Vanderveer v. Moran, 79 Neb. 431, 112 N. W. 581, is relied upon to sustain the position of appellant. Too much is claimed for that case. There was no issue there or objection considered testing the correctness of or the error in the action of the court because it was stated in an instruction that the statute relied upon by the plaintiff provided that any person violating it should be liable for all damages that may accrue to the party damaged because of the violation. The basis of that action was a statute of a class different from the one requiring railroad trains to give signals of their approach to and crossing of a road or street. This distinction has been stated above. The trial court fully and clearly informed the jury of the elements and measure of damage in this case in the event the verdict was favorable to appellant. It was not required to do more in this respect.

It was pleaded that the speed of the train was excessive and negligent because the view of the railroad track was obstructed by unharvested corn, weeds, and posts, and that the crossing involved was near the limits of a village. The district court withdrew this from the consideration of the jury and informed it that

speed of 50 miles an hour of this train was not negligence. Appellant construed this to be a violation of his right to have his theory of the case submitted to the jury. The law assures a litigant the right to have his theory of his case presented to the jury by proper instruction if, and only if, it is pleaded and there is evidence to sustain it. McKain v. Platte Valley Public Power & Irr. Dist., 151 Neb. 497, 37 N. W. 2d 923. The court observed its duty in this regard in this case to the extent that the theory of appellant had evidence to sustain it. There was no evidence of the claim that the speed of the train contributed to or caused the collision. The train was moving at a moderate speed, not more than 50 miles an hour in the open country, and 40 to 45 miles an hour as it came near to and upon the crossing. It is an interesting coincidence that the train and the automobile were operating at the identical speed when about 100 feet from the place of the accident. The contact of the train and the motor vehicle was in the open country. It is generally said that outside the limits of cities, villages, and towns no rate of speed of a train is in itself unlawful or evidence of negligence. Missouri P. Ry. Co. v. Hansen, 48 Neb. 232, 66 N. W. 1105; Omaha & R. V. Ry. Co. v. Krayenbuhl, 48 Neb. 553, 67 N. W. 447; Omaha & R. V. Ry. Co. v. Talbot, 48 Neb. 627, 67 N. W. 599; White v. Chicago, B. & Q. R. R. Co., 93 Neb. 736, 141 N. W. 1038; Lake Shore & M. S. Ry. Co. v. Barnes, 166 Ind. 7, 76 N. E. 629, 3 L. R. A. N. S. 778; Note, 5 L. R. A. N. S. 197.

The ability of a traveler proceeding west towards the crossing involved to see a train approaching the crossing from the northeast was to some extent restricted. But it was shown that a train on the track at any place at least 300 feet east of the crossing could have been seen by a west-bound traveler on the highway. A view of the track to the northeast whence the train was approaching was unobstructed from 50 feet east of the east rail of the track and the driver of the automobile had the

ability when he reached that point, and at any time thereafter until he came to the track, to have stopped his car almost instantly. If the operator of a motor vehicle is familiar with a railroad crossing and the surroundings, it is his duty to look and listen at a time and place where looking and listening will be effective even though vision of the track is restricted. A failure to do so is less than the exercise of due or ordinary care and no recovery can be had for damages resulting from collision with a passing train. In Lewis v. Union Pacific R. R. Co., 118 Neb. 705, 226 N. W. 318, a building less than 25 feet from the crossing involved obstructed the view of the railroad track. Between the track and the building the view was unobstructed. This court said: "* * * It is the duty of the driver of the automobile to have his car under such control that, when he comes to a place where it is possible to see and to hear an approaching train, he can stop it to avoid a collision. Failure to do so is negligence more than slight in comparison with that of the defendant, and will defeat a recovery, even though the whistle was not blown and the bell not rung, or the speed may have been excessive." See, also, Loudy v. Union Pacific R. R. Co., 146 Neb. 676, 21 N. W. 2d 431.

Ordinarily negligence which is the moving or effective cause of a happening is the proximate cause thereof. Loudy v. Union Pacific R. R. Co., *supra*. There was no causal connection between the speed of the train and the injuries to the deceased. Omaha & R. V. Ry. Co. v. Talbot, *supra*. The speed of the train did not contribute to the collision and was in this case immaterial and liability could not be predicated thereon. The speed of the train was not involved in the failure of the operator of the automobile to see the train and stop his automobile before the collision. There is no evidence from which it can be inferred that he was in any way misled by the speed of the train or that he would not have driven his automobile in front of the oncoming train at whatever speed it was traveling. Whatever might

have happened if it had been going more slowly is pure speculation. De Wildt v. Thomson, 241 Wis. 352, 6 N. W. 2d 173; O'Malley v. Eagan, 43 Wyo. 233, 2 P. 2d 1063, 77 A. L. R. 582; Burlie v. Stephens, 113 Wash. 182, 193 P. 684; Seaboard Airline R. R. Co. v. Crowder, 191 Va. 635, 62 S. E. 2d 227. Implicit in the verdict is the conclusion that the collision of the train and the automobile did not happen because of the absence of a signal of the approach of the train or because the headlight of the train was not in operation. The finding of the jury adverse to appellant is conclusive of these matters. The effect of the verdict is that a crossing warning was given by the train and the headlight thereon complied with and was operating as required by law, and that the train could have been seen and the collision avoided by the least vigilance and attention by the driver of the automobile. He cannot be heard to say he gave attention and looked but did not hear the warning or see what was in plain sight. Armer v. Omaha & C. B. St. Ry. Co., *supra*. The record sustains the verdict for appellees.

The argument of appellant that the issue of contributory negligence was presented to the jury without evidence to support it is contradicted by the record. The trial court informed the jury that any negligence of William H. Zabel, the driver of the car in which Hazel Grubb was riding, was not imputed to her, and that she was not guilty of any contributory negligence in this case.

The judgment of the district court should be and it is affirmed.

AFFIRMED.

WENKE, J., concurring in the result.

SIMMONS, C. J., dissenting.

I dissent, particularly disagreeing with the rule stated, and applied by the court that: "* * * outside the limits of cities, villages, and towns no rate of speed of a train is in itself unlawful or evidence of negligence." The corollary of the stated rule would be that inside the

limits of cities, villages, and towns the rate of speed of a train generally and in itself could be evidence of negligence.

A contention that the rate of speed was made unlawful by ordinance or statute is not involved here.

The court by this rule makes the question of whether or not speed "in itself" is evidence of negligence depend on the sole circumstance of whether or not the train is on one side or the other of the legal line that marks the limit of a city or village corporate boundary.

It is a matter of common knowledge that there are cities and villages in this state whose corporate boundaries are in part in fact out in undeveloped and "open country." It is also a matter of common knowledge that there are many of our cities whose growth has been such that the urban development in fact extends well beyond the legal boundaries. In such cities the corporate line makes no distinction in fact in the areas traversed by a railroad so far as questions of negligent operation are concerned.

The rule now adopted has no logical basis. It is an impractical, if not an artificial, rule.

The fault of the rule, as to the issue of negligence, is that it first states an immaterial circumstance to be considered, and then by the word "itself" eliminates from consideration all other circumstances, material or otherwise, except speed. By that process all the circumstances of an accident which go to establish negligence can be put aside one by one. That result has followed in this case.

Speed cannot be separated and set apart from all the other circumstances of an accident such as is involved here. It is difficult to conceive a case where there are no circumstances other than speed and location within or without corporate limits. The decisions cited by the court and those in this dissent illustrate that fact. They deal with "dangerous rate" of speed; "failure to give warning of approach"; "failure to obey the signal"; "ordi-

nary highway crossing"; crossings "in the open country"; "sparsely-settled country"; "thickly settled neighborhood"; "thickly inhabited neighborhood"; "in that locality"; "obscure crossings"; a "clear day"; a "bright still day"; "snow," "wind," and "cuts"; "under the conditions obtaining at the crossing"; and "persons accustomed to walk upon the tracks."

Courts and juries are now to be asked on which side of a legal line did the accident happen. If the location of an accident happens to be a short distance on one side of the legal line, speed "by itself" may be evidence of negligence and if a short distance on the other, speed "by itself" is not evidence of negligence, and that settles the issue of speed as evidence of negligence.

Heretofore the question has been determined on consideration of all the material relevant circumstances. Here plaintiff claims, and specifically recites, other circumstances which it claims should have been, with speed, submitted to the jury for consideration to determine whether "under the circumstances" negligence was shown. The court applies the rule first to take speed out of the case, and then having removed that element, with which the other circumstances are associated, ignores all other circumstances. It is at least an effective rule in this instance.

The trial court instructed the jury: "You are instructed that the plaintiff has failed to prove that defendants were guilty of any negligence in connection with the speed of the train, and therefore the charge of negligence in that particular should be disregarded by you. Speed of fifty miles per hour of this train was not a negligent speed." Plaintiff assigns the giving of the instruction as error, and advances this proposition of law: "The whole question as to whether under all the circumstances the speed of the train was such as to constitute negligence on the part of the defendants should have been submitted to the jury under proper instructions."

The plaintiff set out 10 "circumstances surrounding this accident" which it contends the trial court ignored and which it argues should have been considered with speed. Plaintiff contends here that these circumstances must be considered along with the speed fact. I do not find consideration of those circumstances in the opinion of the court.

Defendant advanced the proposition that: "Unless the speed of the train was a proximate cause it should not be submitted to the jury." It argues that speed was not a proximate cause.

All emphases in this dissent are mine.

The court's opinion on this point cites first Missouri P. Ry. Co. v. Hansen, 48 Neb. 232, 66 N. W. 1105. We there held it was error to fail to instruct " '* * * that no rate of speed is of itself negligence, except where the rate of speed is prescribed or specified by some law or ordinance, and * * * that the defendant company, in the operation of its trains over its tracks outside of any city, or in the absence of any express law to the contrary, has the right to operate its trains at any rate of speed consistent for the safe and proper conduct of its business; and in this case, unless you find the defendant guilty of some negligence alleged in the petition other than the operation of its train at the rate of twenty-five miles per hour, your verdict must be for the defendant.' " The syllabus says: "That a passenger train was run at the rate of twenty-five miles per hour outside the limits of a city or town, *even* in a thickly settled neighborhood *and* at a point where some persons were accustomed to walk upon the tracks, is not in itself and *alone* sufficient evidence of negligence." We there considered the other circumstances. In the body of the opinion it is said: "It has been held that outside the limits of cities and towns no rate of speed is in itself unlawful or negligent. (Burlington & M. R. R. Co. v. Wendt, 12 Neb., 76; Chicago, B. & Q. R. Co. v. Grablin, 38 Neb., 90.)"

The Wendt case in 12 Neb. 76, 10 N. W. 546, was decided in 1881. There a cow was killed *in city limits*. Witnesses fixed the speed of the train at from 8 to 18 miles per hour. We there said in the body of the opinion: "In this sort of action, whether the injury be done *within or without a city*, doubtless the rate of speed may be of great importance in determining whether there *was in fact negligence* on the part of those in charge of the train, and responsible for its movements; but speed alone, *unconnected with any other fact or circumstance*, and more especially where it is not shown to have been *unusual*, has never, that we are aware of, been held sufficient to show gross negligence. Besides, it must be apparent upon the slightest reflection that no arbitrary rule as to the rate of speed at which a train of cars may not be run, with due regard for the safety of persons and property, can be applicable to all portions of a town or city alike. Evidently a rate which in one portion, *or under certain circumstances* might be entirely reasonable, in another and more thickly inhabited portion, *or under different circumstances*, would very justly be deemed unwarrantable, and evince a most *reckless disregard* for the rights, both of persons and property." It will be noted that we did not say speed, as a matter of law, should be detached and considered separately from the other circumstances, but when "unconnected with any other fact or circumstance" it is insufficient to show "gross negligence." We further said: "As showing that speed *alone*, even although it be at an unlawful rate, is not sufficient to fix a liability for an injury, the case of Brown, Admr. v. The Buffalo and State line R. R. Co., 22 N. Y., 191, is in point." This is the beginning of the rule here involved.

Brown v. Buffalo and State Line R. R. Co., 22 N. Y. 191, was an "in city" case where the rate of speed was prohibited by city ordinance. The question was whether the violation of the ordinance was *alone* evidence of negligence sufficient to charge the defendant with the

consequences of the collision provided the injury would not have occurred except for such violation. In the body of the opinion it is said: "* * * and except for the ordinance, it was not, per se, unlawful for the defendants to run their trains at any speed, *provided no actual want of care could be imputed to them.* Whether there is negligence *in fact usually depends upon a number of circumstances,* and *not unfrequently the rate of speed becomes quite material in determining the question.* Under one class of circumstances, twenty miles would not be deemed unreasonable, while in another five miles or less would be regarded as culpable carelessness." It was held that the running of the train at a speed greater than six miles per hour *"unconnected with any actual negligence,"* involved the defendant in no other consequences than the payment of the penalty.

The New York case (Brown v. Buffalo and State Line R. R. Co., *supra,*) cited in the Wendt case, *supra,* was directly overruled in Beisegel v. New York Central R. R. Co., 14 Abbott's Practice Reports (N. S.) p. 29, in 1870, eleven years before we cited it. That was an "in city" case. The basis of the overruling was the limitation to the payment of the penalty. That is pointed out in Massoth v. Delaware and Hudson Canal Co., 64 N. Y. 524 (decided in 1876, five years before we decided the Wendt case). That was an "in city" case. The court said: "Irrespective of any ordinance or law regulating the speed of railroad trains, it was a *question of fact* whether the rate was excessive or dangerous *in that locality,* and if so found by the jury, and such excessive rate of speed caused the collision, the defendant was liable for the consequences."

The next case cited in Missouri P. Ry. Co. v. Hansen, *supra,* is Chicago, B. & Q. R. R. Co. v. Grablin, 38 Neb. 90, 56 N. W. 796. That was an "in the country" case. The speed of the train was from 17 to 35 miles an hour. The question of the use of air brakes was involved. We held that the failure to have air brakes did not con-

tribute to the death unless the speed of the train was negligent. We said in the body of the opinion: "We are not prepared to say that ordinarily any rate of speed of a train, however high, outside of the limits of cities, towns, and villages is of itself negligence." However, in the syllabus we said: "Outside the limits of cities, villages, and towns *negligence cannot be imputed* to a railroad company *solely* by reason of the speed of its train, however great. *Whether under the circumstances the rate of speed is negligence is a question of fact.*"

The second case cited as authority in the court's opinion is Omaha & R. V. R. Co. v. Krayenbuhl, 48 Neb. 553, 67 N. W. 447. This was written by the same judge who wrote the Hansen case and was filed during the same term in 1896. That was an "in the country" case. There was snow and wind, and cuts, and a speed estimated at from 18 to 45 miles per hour. There was evidence not only of running the train at a dangerous rate of speed but also of failure to give warning of approach and disregard of a signal. We there said: "The point where the accident occurred was not within any town or city, and it has been repeatedly held that no rate of speed is of itself negligence *under such circumstances.*"

The next case cited in the court's opinion is Omaha & R. V. Ry. Co. v. Talbot, 48 Neb. 627, 67 N. W. 599. We said: "The negligence charged by Talbot to the Valley Company was that the train which injured him was behind schedule time; that it was running with great speed, and that no signal was given of its approach to the crossing. It is not possible that a train should always be on schedule time, and we do not think that the running of a train behind its schedule time is evidence which tends to prove negligence; and outside the limits of cities, villages, and towns no rate of speed of a railroad train, however great, is evidence of negligence." We considered all the circumstances. We cited the Grablin and Hansen cases. We then explained our views by saying: "Railroad companies are organized and rail-

roads are built and operated for speed. Commerce, business, and the busy world are in haste. The civilization and genius of the age demand haste, demand speed, and to require railroad companies to move their trains at so slow a rate of speed that they could be *easily stopped* when *approaching ordinary highway crossings in the country* would be to seriously impair their usefulness as carriers and take a step backwards towards the sailboat and the stage coach." We considered the other circumstances.

The syllabus point is: "Outside the limits of cities, villages, and towns, negligence *cannot be imputed* to a railroad company *solely* by reason of the speed of its train, however great."

The next case cited in the opinion is White v. Chicago, B. & Q. R. R. Co., 93 Neb. 736, 141 N. W. 1038. That was an "in the open country" case involving a crossing which could be seen at a considerable distance in the direction from which the train was approaching. The train was going at least 50 miles an hour. We held: *"In the open country,* outside of cities, villages and towns, *where there are no obscure crossings,* negligence cannot be imputed to a railroad company solely by reason of the speed of its train." It is noted that here again the other circumstances were considered. There we cited the Talbot case and Brown v. Chicago, B. & Q. Ry. Co., 88 Neb. 604, 130 N. W. 265. The syllabus in White v. Chicago, B. & Q. R. R. Co., *supra,* is: "It is not negligence for a railway company to operate a passenger train at the rate of *50 miles an hour,* during a *clear day,* in the *open country,* where there are no *obscure* crossings." The Brown case involved a contention that the train should have been operated so that it could have been stopped to avoid the collision. The syllabus is: "It is not negligence for a railway company to operate a passenger train at the rate of 45 or 50 miles an hour during a *bright, still day,* in the *open country* where there are

no obscure crossings." Again note that the other circumstances were considered.

The court's opinion then cites the case of Lake Shore & M. S. Ry. Co. v. Barnes, 166 Ind. 7, 76 N. E. 629, 3 L. R. A. N. S. 778. The Indiana court did not state any broad general rule such as this court adopts. They said in the syllabus of the state report: "It is not *negligence per se* to run a train over an ordinary country highway crossing at the speed of fifty miles an hour." However, the same court, citing this case, said: "* * * this court held that it was not *negligence per se* to run a train over an *ordinary country highway crossing* at any speed consistent with the safety of the persons and things being carried. It is generally held that, in the absence of statutory regulations, a railway company may use its discretion in establishing the speed of its trains. 33 Cyc. 971. *This does not excuse it from the common-law duty of exercising care for the safety of persons traveling on highways crossing its tracks; and the rate of speed to be used in a given case depends on the nature of the crossing, and other cimcumstances surrounding the alleged injury.*" The jury has the "right to determine whether defendant exercised reasonable care and prudence, under the *particular circumstances* of the case * * *." Brooks v. Muncie & Portland Traction Co., 176 Ind. 298, 95 N. E. 1006. The same court has said: "* * * the rate of speed of a train, *in connection with other circumstances,* may be considered in determining the issue of negligence * * *." Terre Haute & Indianapolis R. R. Co. v. Clark, 73 Ind. 168.

I refer now to some of our opinions dealing with the same subject matter which the court's opinion ignores.

Chicago, B. & Q. R. R. Co. v. Clark, 26 Neb. 645, 42 N. W. 703, was decided in 1889. There the court instructed the jury that it was negligence to run a train at "full speed" over a track known to be frequented by cattle "unless that part of the track is properly guarded." We held the requirement above quoted was error. The

opinion turned on that question. We said: "There is no doubt but that it would have been competent to instruct the jury that while running over that part of the track a *greater degree of care* should be taken than while passing over the other portions of the road, perhaps; but we know of no rule which would require the track to be guarded. Any other kind of care which would have secured safety, would have been sufficient. Furthermore, *the question of negligence was for the jury to decide under all the facts and circumstances proven.*" Earlier in the decision we held that evidence as to the *bad condition of the track* was competent for the purpose of showing negligence as to the dangerous *rate of speed* of the train.

Chicago, R. I. & P. Ry. Co. v. Sporer, 69 Neb. 8, 94 N. W. 991, was an accident case "in the country" on the carrier that is defendant here and about a mile from where this accident happened. The running of a train at a high rate of speed was alleged and proved. There the trial court instructed the jury that: "* * * if you find from the evidence that at the time of the accident, defendants passenger train was running at a rapid rate of speed, then you may consider this fact, if it be a fact, in connection with all other facts proved upon the trial in determining whether or not defendant Railroad Company was negligent." The carrier in its brief stated: "The speed at which the train was being run should have been considered by the jury in connection with all the other facts, but the court should not have selected it from the other facts and given it such great and undue prominence." Subsequently in a reply brief the carrier (*this* carrier) stated: "The place of the accident was an ordinary country crossing and the rate of speed of a train passing a country crossing is not per se negligence." It cited for that rule the Grablin, Talbot, Hansen, Krayenbuhl, and Wendt cases. Defendant contended it was entitled to a directed verdict. We said in the opinion: "Railway crossings are always places of danger. * * *

*Under these conditions* it can not be said that the speed at which the train was running might not of itself render it impossible for one crossing the track at this point to avoid such an accident. *The whole question as to whether under all the circumstances the speed of the train was such as to constitute negligence on the part of the defendant should have been submitted to the jury under proper instructions.* The court therefore did not err in refusing to direct a verdict for the defendant."

The syllabus is: "In this case it was for the jury to determine the rate of speed at which defendant's train was running at the time of the accident, and whether, *under the conditions obtaining at the crossing,* the company was negligent in running its train at such rate of speed."

In Kafka v. Union Stock Yards Co., 87 Neb. 331, 127 N. W. 129, an "in city" case, we said: " 'The first question is as to the negligence of defendant; Two witnesses for defendant swore the engine was going 6 miles an hour, a witness for plaintiff said 12 miles, and another witness swore that one of defendant's witnesses had stated on one occasion that the rate of speed was 12 miles an hour. In this state of the record there is sufficient evidence to warrant a finding either way, and in support of the verdict we must assume the jury found the higher rate. It was *for the jury* to say whether or not, *under all the circumstances,* such rate was negligence.' "

Craig v. Chicago, St. P., M. & O. R. R. Co., 97 Neb. 426, 150 N. W. 374, was decided in 1914. It has not been changed, modified, or overruled.

This was an "in city" case.

Defendant carrier contended that speed alone is not evidence of negligence. In its brief it asserted that "it is the settled rule in this state, and in other jurisdictions, that the rate of speed alone cannot be said to be evidence of negligence in the event of an accident at a crossing." To sustain that rule they cited the Wendt

case, the Grablin case, the Hansen case, the Krayenbuhl case, and the Brown case. We answered that contention in this language: "It is insisted that a fast rate of speed cannot of itself be negligence, citing cases, and quoting the opinion of Judge Lake in Burlington & M. R. R. Co. v. Wendt, 12 Neb. 76, to the effect that 'speed alone, unconnected with any other fact or circumstance, and more especially where it is not shown to have been unusual, has never, that we are aware of, been held sufficient to show gross negligence.' This opinion, however, also states that a *rate of speed* entirely reasonable at *some places* and *under some circumstances* might evince a reckless disregard for the rights of persons and property at *another*. The latter principle is also stated by Judge Lake in his opinion in Meyer v. Midland P. R. Co., 2 Neb. 319, 335. The Nebraska cases cited in support of the theory that the rate of speed is no evidence of negligence show that in *each case* the facts were that the trains were running *in the open country* outside of the limits of any city or village, *and the language used applies to such conditions. * * * The true principle* is that a railroad company must use such care and precaution as ordinary prudence indicates. They must exercise greater care and greater vigilance in cities or towns where crossings are frequently used by large numbers of people than *at ordinary crossings in the open country. The degree of care which the law requires to be exercised must be commensurate with the probability of danger.* In some instances in cities and villages, ordinary care and prudence demand that gates be erected or flagmen stationed or electric bells or signals installed, while in other cases all that would be necessary would be to lessen the speed of the train, or give continuous signals of its approach, or both. Grand Truck R. Co. v. Ives, 144 U. S. 408." We there held that a finding that the rate of speed considered in connection with *all the other* circumstances was a negligent one, was upheld by the evidence, and that the practice of running

the train at the speed shown "over this dangerous crossing" did "not justify the lack of ordinary care."

The case of Meyer v. Midland P. R. R. Co., 2 Neb. 319, cited in the Craig case, was an "in city" case. There we said: "It is doubtless true, even in the absence of a statutory regulation upon the rate of speed upon railroads within the thickly-settled portion of cities and villages, that a reasonable rate must be observed, which is to be determined from a due consideration *of all the circumstances.* A proper regard for the safety of the inhabitants and their property imperatively requires that this should be so. It is but an application of the same wholesome rule to railroad companies in running their trains that would govern an individual in driving a team of horses along a public thoroughfare. Here it is quite clear that a rate of speed that would be entirely justifiable *in the open and sparsely-settled country,* might, in the crowded streets of a city, be considered as criminal carelessness."

Craig v. Chicago, St. P., M. & O. Ry. Co., 97 Neb. 586, 150 N. W. 648, was a companion case arising out of the same accident as that just discussed. There the defendant carrier made the same contention, citing the same cases as it did in the previous case. We there held: "It will be unnecessary, therefore, to consider the claim of defendant that the evidence does not support a finding that it was guilty of negligence, that point having been decided adversely to its contention in the former case."

C. J. S. states the rule as follows: "In the absence of any statute or ordinance on the subject, no particular rate of speed in running a train is *negligence per se,* although the rate of speed may be considered in connection *with other circumstances* in determining the issue of negligence." 74 C. J. S., Railroads, § 691, p. 1287.

"In actions for injuries to person or property at railroad crossings, ordinarily it is a question for the jury to determine at what rate of speed the train was running at the time of the accident, as, for example, whether

the train causing the injury was running at a rate of speed in excess of that fixed by statute or ordinance. *In addition,* it is a question for the jury to determine whether or not, under all *the circumstances existing at the time and place where the injury occurred,* the rate of *speed was negligent.* This is so although the rate of speed was *not* fixed by statute or ordinance, * * *." 75 C. J. S., Railroads, § 870, p. 202.

Am. Jur. states the rule as follows: "The general rule is that in the absence of a prohibitory statute or ordinance a railroad company may run its trains at such speed as it sees fit, and that a charge of negligence cannot be predicated on the rate of speed at which a train is run unless *there are attendant circumstances* which make such speed negligence. *A rate of speed that would be entirely safe under some conditions may, however, be recklessly dangerous under other conditions.*" 44 Am. Jur., Railroads, § 456, p. 684.

I submit that the proposed rule is not correct. I submit further that the defendant does not contend for such a rule but says that the speed of its train was not the proximate cause of the accident. Its opening sentence in the argument is: "There are of course cases where the speed of a train might be a proximate cause of a crossing collision. This is not such a case."